Cunningham, P. J.
Mathieson, the defendant in error, as plaintiff below, brought his action upon a joint and several promissory note given to him by the Psychic Science Company, and the plaintiff in error, Rose A. Agnew, the note representing money borrowed from Mathieson. The note sued, upon was dated April 29th, 1909, and was made to mature two months later. On or about the date of the maturity of the note referred to, *60 plaintiff’s wife presented the same to- J. Howard Cashmere, the president of the Psychic Science Company, and Cashmere paid her the interest then due, and $150 on the principal of the note, and endorsed these payments on the back of the note, writing across the face of it the following: “Paid by new note for two months for $1,350.” At the time of this transaction Cashmere drew up a second note in favor of plaintiff for $1,350, due in two months, and delivered the same to the wife of the plaintiff, retaining the old note. Note No. 2 was signed by the Psychic Science Company only. Shortly after that note fell due, plaintiff’s wife also presented it to Cashmere for payment, and he endorsed thereon the following: “$45 interest paid to October 9-09,” and across the face of it wrote the following: “Paid by renewed note October 9-09.” This second renewal note, or note No-. 3, was also signed by the Psychic' Science Company only, but for. some reason not explained, was made payable to Maggie Mathieson, the wife of plaintiff. On the trial all three of the notes were produced, and were introduced in evidence. Mrs. Mathieson testified, in substance, that the original note had been left by her with one John McDonough, who apparently had the custody of it for the convenience of the Mathiesons; that it was kept in an envelope, and when she presented it to Cashmere, she simply handed him the envelope containing the note; and in like manner she presented, supposedly, note No. 2, at the time it was taken up and note No. 3 issued; that she had no knowledge whatever that Cashmere had written anything across the face of note No. 1, or that he had substituted in lieu thereof note No. 2; nor did she have any knowledge, ac'cording to her testimony, of the substitution of note No. 3 for note No. 2. She, having no knowledge whatever’of the substitution; of course gave no consent to that transaction. It appears that after note No. 1 and note No. 2 had thus gone into the possession of Cashmere, they were kept in, the safe of the Balance Publishing Company. Cashmere appears to have had complete control over both com- *61 parries. Afterwards Cashmere got into trouble, which landed him in the penitentiary, and his secretary delivered notes No. 1 and 2 to some representative of Mathieson, and they all came into the hands of his attorney. As We have said,' suit was brought by plaintiff on the original note, and he repudiated the two renewal nctes, testifying positively that he had given his wife, who, because of his illness, transacted his business for him, no authority whatever to consent to the surrender of the original note, or to accept either of notes No.-2 or 3. The defendant Agnew testified that she signed the first note, and. that after Cashmere had taken it up, he exhibited it to her, with the memorandum and endorsements above referred to upon it, advising her that she had been entirely released from her obligation upon the note. She insisted, at the trial, that she had signed the note simply as a surety, and that the money was obtained solely for the use of the Psychic Science Company. On the trial there was no appearance for the Psychic Science Company, and default was entered against it. The case was fried to the court without a jury, and the judge found: “That the fraud, in the judgment of the court, was known alone to- Cashmere.” We think the evidence is ample to support this finding. Judgment was rendered against Agnew, from which she sued out a writ of error, by which the case is brought to this court for review.
1. Under the facts stated, there is but one serious question for our consideration, and that is, whether the plaintiff, Mathieson, by delivering the note to his wife for presentation to Cashmere, as the head of the Psychic Science Company, was grossly negligent, in that he put it within the power of Cashmere to- perpetrate a fraud to the injury of Agnew. We are not strongly impressed with this argument, which seems to be based largely upon the theory that Cashmere possessed some sort of psychic power over both Mrs. Agnew and Mrs. Mathieson, who- appear to have been devotees of his Cult. At the* time Mrs. Agnew signed the note, she was actively and officially connected with the Psychic Science Company, being *62 its secretary, and the librarian and stenographer for the company, or for Cashmere. By signing the note, she indicated to Mathieson her confidence, both in the solvency and integrity of Cashmere, and the Psychic Science Company; so if anyone was imposed upon, it would appear to have been Mathieson, rather than Mrs. Agnew. Moreover, the record shows that Mrs. Agnew had stated, prior to the presentation of the first note, that Cashmere had all of her money, and that, by reason thereof, she was bankrupt, and living upon the charity of friends, hence his misrepresentation to' her as to her release from the note can hardly be said to have lulled her into a sense of security, to her injury, for it does not in any way appear that had she had full knowledge of all that transpired, she could have in any way protected herself from her liability on the first note, the one here sued upon. Indeed, as we have seen, there is evidence tending to show that there was no opportunity whatever for her to have so protected herself.
2. It is urged on behalf of defendant that the trial court erred in overruling her motion for a new trial, which was based largely upon a claim of newly discovered evidence, and upon surprise. Defendant insists that she,
“Had no' means of knowing, either from the pleadings or otherwise, that plaintiff could or would claim that said second note of $1,350 had been procured or delivered by fraud, or otherwise, and that defendant had no opportunity to meet such testimony, having had no prior intimation that such testimony could or would be produced.”
We discover no merit in this contention, first, because no objection, based upon surprise, was made to the introduction of testimony on the trial.
“Objection on the ground of surprise is waived unless the party surprised calls the court’s attention to the matter at the time, and asks for some proper relief.” — Outcalt v. Johnson, 9 Colo. App. 519.
The authorities on' this point are numerous and harmonious. Second, we can not agree with the contention made *63 on behalf of plaintiff in error as to the pleadings, for the complaint in the cause set out the original note m haec verba, and in and by the complaint the defendant was advised that the plaintiff would go to trial upon said first note; indeed, the whole complaint is bottomed upon note No. x, and upon nothing else. It would therefore seem unreasonable to contend that the defendant could not know that the plaintiff would insist that this note had never been paid, but was still in full force and effect. Defendant must have known, by inevitable deduction, that in order for plaintiff to rely upon note No. 1, he would have to show that No. 2 was a. fraud, and that the cancellation made across the fac'e of No. 1 was a fraud. But defendant was not driven to this deduction, palpable though it was, for in the fifth paragraph of the complaint appears the following:
“Plaintiff further states that there now appears written across the face of said note the following, to-wit: ‘Paid by new note for two months of $1,350.00,’ and plaintiff alleges that said writing' has been placed there since the execution and delivery to him of said note. That the same has been placed thereon without his knowledge, and without his consent or authority. Plaintiff further alleges that said note has not been paid by the issuance to him of a note for the sum of $1,350, or at all, save and exc'ept the payment of the sum of $150 as aforesaid, and that said note is in full force and effect according to the tenor as above set forth.”
By the complaint itself, therefore, it is clear that the defendant was fully advised of all the facts which would make! the deposition of Cashmere (whose affidavit she produced on her motion for new trial) necessary, and being in the penitentiary, it can hardly be said that Cashmere could not have been found before the trial and his deposition taken. Third, the infamous character of Cashmere’s conduct, as disclosed by the evidence in this case, would hardly justify the setting aside of a judgment and the granting of a new trial for the purpose of taking his deposition.
*64 We are persuaded that the evidence in the case is sufficient to sustain the findings and judgment of the trial court, and for that reason the judgment will be affirmed.

Judgment Affirmed.