DENNY CONSTRUCTION, INC., a
Colorado corporation, Plaintiff–
Appellee and Cross–Appellant,

v.

CITY AND COUNTY OF DENVER, Colo-
rado, acting by and through its BOARD
OF WATER COMMISSIONERS, a mu-
nicipal corporation of the State of Colo-
rado, Defendant–Appellant and Cross–
Appellee.

No. 05CA1535.

Colorado Court of Appeals,
Div. V.

Feb. 22, 2007.

Certiorari Granted Nov. 26, 2007.

Peterson Dymond Reagor, LLP, David D. Schlachter, Douglas W. Colville, Ashley R. Chagnon, Greenwood Village, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Board of Water Commissioners, Patricia L. Wells, Gail J. Rosenschein, Kristi K. Riegle, Daniel J. Arnold, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge J. JONES.

The City and County of Denver, acting through its Board of Water Commissioners (Denver Water), appeals a judgment entered on a jury verdict awarding damages in favor of Denny Construction, Inc. (Denny) on Denny's claim for breach of contract. Denny cross-appeals the trial court's order denying its request for costs. We reverse the award of damages for lost profits, but otherwise affirm the judgment. We further affirm the trial court's order denying Denny's request for costs.

## I. Background

On June 5, 2002, as a result of a public bidding process in which Denny was the low bidder, Denver Water and Denny entered into a written contract whereby Denny agreed to build an office facility for $3.5 million. The contract required Denny to complete construction of the facility by July 7, 2003. However, due to a series of weather incidents and design changes, construction of the facility was delayed. Denny submitted several requests to extend the completion date for the project. Denver Water ultimately granted extensions to October 3, 2003; however, Denver Water did not grant several of the extensions requested by Denny.

Denver Water began occupying the facility in November 2003, a few days after a certificate of occupancy for the facility was issued. At that time, the project was largely, although not entirely, completed. The project remained uncompleted in the spring of 2004, and Denver Water declared Denny in default on April 23, 2004. At that point, Denny's surety, Insurance Company of the West (ICW), which issued the performance bond for the project, took over the project and completed the remainder of the construction. According to Denny, if all of its requests for extension of the completion date had been allowed, the date of completion would have been after the certificate of occupancy was issued, and therefore Denver Water would not have declared Denny in default.

Denver Water withheld over $260,000 of the contract amount, representing a five-percent retainage allegedly permitted by the contract and $84,000 for the cost to complete the remaining work. Denny alleged that this withholding rendered it unable to pay its subcontractors. Several subcontractors subsequently brought lawsuits against Denny seeking payment.

This case began when M.C.R. Construction (MCR), one of Denny's subcontractors, filed suit against Denny, Denver Water, and others (including ICW) to obtain funds withheld by Denver Water for work allegedly performed by MCR. Denny filed cross-claims against Denver Water for breach of contract and declaratory judgment. Denny alleged, among other things, that Denver Water wrongfully withheld amounts payable under the contract, modified the scope of the work without following contractually required procedures, wrongfully asserted a claim against the performance bond, and failed to grant requested extensions of the completion date. Denny requested damages for payments due under the contract, loss of business reputation, diminution of its "credit status," and costs relating to Denver Water's claim against ICW on the performance bond.

Denver Water filed cross-claims against Denny for, among other things, breach of contract for Denny's failure to complete construction by the contractual completion date

and its failure generally to perform all the work required by the contract. Denver Water sought damages, including liquidated damages as set forth in the contract.

Prior to trial, all claims were settled except for Denny's and Denver Water's cross-claims against each other. A jury trial was held on the cross-claims for breach of contract. At trial, Denny asserted breaches of express provisions of the contract and the implied covenant of good faith and fair dealing.

The jury found in favor of Denny on its claim and awarded it $1,063,000 in damages, broken down as follows: $25,000 for payment owed under the contract for work performed; $152,000 for costs, expenses, and unreimbursed payments by ICW as a result of Denver Water's claim on the performance bond; $41,000 for attorney fees incurred by Denny in defending against claims brought against it by its unpaid subcontractors; $380,000 for lost profits through the date of trial attributable to contracts Denny could not bid on due to impairment of its bonding capacity; and $465,000 for such lost profits after the date of trial. The jury also found in Denny's favor on Denver Water's cross-claims.

The trial court granted Denny's request for prejudgment interest on damages for amounts unpaid under the contract, but denied Denny's request for prejudgment interest on the remaining categories of damages, as well as its request for costs.

## II. Denver Water's Appeal

### A. Implied Covenant of Good Faith and Fair Dealing

Denver Water contends that the trial court erred in allowing Denny's claim for breach of the implied covenant of good faith and fair dealing to go to trial because Denny failed to properly plead such a breach and because Denny's claim invoked express terms of the contract. We disagree with both contentions.

#### 1. Adequate Notice of Claim

One month before the scheduled trial date, Denver Water filed a motion in limine, asking the trial court to bar evidence and argument at trial on Denny's claim for breach of the implied covenant of good faith and fair dealing because Denny did not expressly and separately allege this claim in its cross-claim. Denver Water asserted that it was not aware of any such claim until Denny's counsel included it within the proposed trial management order, and thus its ability to defend against the claim was substantially prejudiced. The trial court denied Denver Water's motion in limine on the first day of trial, ruling that Denny's claim for breach of the implied covenant of good faith and fair dealing was subsumed in its breach of contract claim.

■ We review a trial court's ruling on a motion in limine for an abuse of discretion. See *Ehrlich Feedlot, Inc. v. Oldenburg,* 140 P.3d 265, 272 (Colo.App.2006). A trial court's ruling is an abuse of discretion if it is manifestly arbitrary, unreasonable, or unfair. *Beauprez v. Avalos,* 42 P.3d 642, 652 (Colo. 2002); *Lakeside Ventures, LLC v. Lakeside Dev. Co.,* 68 P.3d 516, 518 (Colo.App.2002).

■ In order to sufficiently state a claim for relief, a claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." C.R.C.P. 8(a)(2). The primary purpose of this requirement is to give fair notice of the claims asserted to the adverse party, thereby allowing the adverse party to answer those claims and prepare for trial. *Smith v. Mills,* 123 Colo. 11, 13, 225 P.2d 483, 484 (1950). Accordingly, "[i]f sufficient notice *concerning the transaction involved* is afforded the adverse party, the theory of the pleader is not important." *Bridges v. Ingram,* 122 Colo. 501, 506, 223 P.2d 1051, 1054 (1950) (emphasis added); *see also Hutchinson v. Hutchinson,* 149 Colo. 38, 41, 367 P.2d 594, 596 (1961); *City of Boulder v. Pub. Serv. Co.,* 996 P.2d 198, 203 (Colo.App.1999) (we are "not bound by the form in which [a party] asserts its claim, but rather it is the facts alleged and the relief requested that decide the substance of a claim"). Moreover, we must construe pleadings liberally and resolve all doubts in favor of the pleader. *Lyons v. Hoffman,* 31 Colo.App. 306, 308, 502 P.2d 980, 982 (1972); *Denver & Rio Grande West-*

*ern R.R. Co. v. Wood,* 28 Colo.App. 534, 538, 476 P.2d 299, 301 (1970).

Here, Denny's cross-claim alleged, among other things, that Denver Water "wrongfully withheld contract funds, modified the project specifications and scope of work without authorizing change orders, refused to pay for work completed, [and] wrongfully suspended work," and that Denver Water had "refuse[d] to grant extensions" of the contract completion date. These allegations put Denver Water on notice of the transactions as to which Denny sought to impose liability under its legal theory of breach of the implied covenant of good faith and fair dealing. *Cf. Hinsey v. Jones,* 159 Colo. 326, 329–30, 411 P.2d 242, 244 (1966) (allegation of breach of written contract did not preclude recovery on another theory where complaint gave notice of transaction).

Further, though the cross-claim did not use the words "implied covenant of good faith and fair dealing," it plainly stated a claim for breach of contract. Because the implied covenant of good faith and fair dealing is a contractual covenant, a breach of that covenant is a breach of contract. *Wheeler v. Reese,* 835 P.2d 572, 578 (Colo.App.1992). Thus, we agree with the trial court that the theory of breach of the implied covenant of good faith and fair dealing was subsumed within the breach of contract claim and did not have to be pled separately. *See RoTec Servs., Inc. v. Encompass Servs., Inc.,* 359 S.C. 467, 597 S.E.2d 881, 883–84 (Ct.App. 2004) (breach of implied covenant of good faith and fair dealing is subsumed within a breach of contract claim; listing cases).

Denver Water's contention it lacked notice of this claim is belied by the record. In addition to the cross-claim itself, the theory was asserted in Denny's responses to interrogatories, submitted to Denver Water several months before trial. Denny also argued the theory in its motion for summary judgment, which it filed almost three months before trial. In responding to that motion, Denver Water did not claim surprise or lack of notice, but instead merely argued the merits of the claim. Hence, Denver Water's contention on appeal that it was not aware of

the claim until Denny included it within the summary of claims in the proposed trial management order is disingenuous.

Denver Water's assertion that it was prejudiced by the alleged lack of notice is also untenable. Denver Water asserts no specific prejudice, nor does it point to any specific defenses it might have raised if the claim had been separately pled. Rather, it vaguely asserts difficulty in preparing for trial. In these circumstances, and based on our review of the record, we conclude Denver Water failed to articulate, much less demonstrate, any specific, cognizable prejudice resulting from its having to defend against the claim at trial.

In sum, we conclude that the trial court did not abuse its discretion in permitting Denny to present evidence on this claim at trial.

### 2. Application to the Contract

Denver Water also argues that Denny's claim for breach of the implied covenant of good faith and fair dealing should not have gone to the jury because, as a matter of law, the breaches complained of by Denny were governed by specific contract terms that were not open or discretionary. We disagree.

Denver Water preserved this contention for appeal by moving for a directed verdict pursuant to C.R.C.P. 50 at the close of Denny's evidence and raising it as a basis for directing a verdict in its favor. The trial court denied that motion. Where, as here, the issue raised on a motion for directed verdict is one of law, we review the trial court's ruling de novo. *Omedelena v. Denver Options, Inc.,* 60 P.3d 717, 722 (Colo.App. 2002); *Evans v. Webster,* 832 P.2d 951, 954 (Colo.App.1991).

"[E]very contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo.1995). However, the implied duty applies to specific contract provisions only when "one party has discretionary authority to determine [those] terms," or, in other words, "when the manner of performance under a

specific contract term allows for discretion on the part of either party." *Amoco Oil Co., supra,* 908 P.2d at 498; *see also Bayou Land Co. v. Talley,* 924 P.2d 136, 154 (Colo.1996); *Grossman v. Columbine Med. Group, Inc.,* 12 P.3d 269, 271 (Colo.App.1999).

"[D]iscretion in performance 'refers to one party's power after contract formation to set or control the terms of performance.' " *Amoco Oil Co., supra,* 908 P.2d at 498 (quoting in part Steven J. Burton, *More on Good Faith Performance of a Contract: A Reply to Professor Summers,* 69 Iowa L.Rev. 497, 501 (1984)). The implied covenant applies in these instances because, when one party has discretion over the manner of performance, the other party must rely on the good faith of that party in exercising its discretion during performance. *Amoco Oil Co., supra,* 908 P.2d at 498–99.

■ Based on our review of the record, it is clear that Denver Water had discretion in determining performance under a number of contract provisions relied on by Denny. These include (1) the acceptability of the work performed by Denny (Articles 9.11 and 14.12 of the General Conditions); (2) whether, under what circumstances, and to what extent to grant Denny's requests for extensions of time (Articles 12.1 and 12.4 of the General Conditions); (3) reimbursement for materials and equipment (Article 14.2 of the General Conditions); and (4) whether to grant Denny's applications for progress payments (Articles 14.4 to 14.7 of the General Conditions). All these provisions called for Denver Water to make judgments, and none provided that Denver Water's judgments were unfettered or immune from challenge. *Cf. Monroe Prop., LLC v. Bachelor Gulch Resort, LLC,* 374 F.Supp.2d 914, 922 (D.Colo. 2005) (implied covenant of good faith and fair dealing did not apply to alter party's duty regarding consent to assignment where contract expressly provided that party could refuse consent for any reason without risk of civil liability for doing so).

Accordingly, we conclude that the trial court did not err in denying Denver Water's motion for directed verdict and allowing Denny's claim for breach of the implied covenant of good faith and fair dealing to go to the jury.

### B. Lost Profits

Denver Water argues that the trial court erred in allowing Denny to recover damages for lost profits on its contract claim. We agree.

Denny claimed that as a result of Denver Water's declaration of default and claim against the performance bond, ICW reduced the number of performance bonds it would issue for Denny and ultimately ceased writing bid, payment, and performance bonds for Denny. According to Denny, this caused it not to be able to bid on and obtain other public works projects, and, based on its past performance, it would have been successful in bidding on a number of those projects and would have made profits therefrom.

Prior to trial, Denver Water filed a motion in limine to bar evidence of Denny's claim for lost profits, arguing that damages for lost profits based on impaired bonding capacity were speculative and unforeseeable. The trial court denied that motion. The jury awarded Denny a total of $845,000 in lost profits based on impairment of bonding capacity.

Denver Water argues that the award of damages to Denny for lost profits must be set aside because such damages are too speculative as a matter of law and were not reasonably foreseeable under the circumstances of this case. We agree.

Because Denver Water's argument raises an issue of law, our review is de novo. *See Medina v. State,* 35 P.3d 443, 452–53 (Colo. 2001).

■■ The goal of a damage award is to " 'place the parties in the same financial position they would have occupied had the contract terms been fulfilled.' " *Colo. Nat'l Bank v. Friedman,* 846 P.2d 159, 174 (Colo. 1993) (quoting *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.,* 704 F.2d 484, 488 (10th Cir.1983)). Consequential damages may be awarded, in some cases, for profits lost as a result of a breach of contract. *See Colo. Nat'l Bank, supra,* 846 P.2d at 174; *McDonald's Corp. v. Brentwood Ctr., Ltd.,*

942 P.2d 1308, 1310 (Colo.App.1997). However, "[l]ost profits may not be awarded if they are speculative, remote, imaginary, or impossible to ascertain." *McDonald's Corp.*, *supra*, 942 P.2d at 1310; *see also Western Cities Broadcasting, Inc. v. Schueller*, 849 P.2d 44, 50 (Colo.1993).

■ A party seeking to recover damages for lost profits must prove three things. First, the party must prove that the lost profits were reasonably foreseeable to all parties to the contract at the time they entered into the contract. *See Colo. Nat'l Bank, supra*, 846 P.2d at 174. Second, the party must demonstrate that the damages sought "are traceable to and are the direct result of" the breaching party's conduct. *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1025 (Colo.App.1993). Third, the party must prove that there is a reasonable basis for computing such damages. *Graphic Directions, Inc., supra*, 862 P.2d at 1024; *see also Pomeranz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993); *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943–45 (Colo.1985).

■ Here, Denny alleged that as a result of its inability to obtain performance bonds from ICW, it could not bid on public projects, and that had it been able to do so, it would have made over $1.5 million in additional profits over a three-year period. Denny submitted into evidence a list of projects it believed it could not bid on due to its loss of bonding capacity, and Denny's president testified that there were "hundreds" of such projects. However, Denny did not identify any specific projects that it actually lost as a result of the breach by Denver Water.

As further support for its lost profits claim, Denny also cited its history of successfully bidding prior to the breach by Denver Water. Denny presented general testimony about the type, size, and frequency of public projects it had obtained in the past, including contracts, financial statements, income statements, and brochures. Denny's expert witness projected lost profits based on financial records from the previous five years and a variety of assumptions pertaining, for example, to the number and dollar amount of future public projects and the ratio of bond-ed, public projects to nonbonded, private projects that Denny would have obtained.

■ We conclude, as have other courts that have considered this issue, that a claim that a party would have received profits from future public project contracts if its bonding capacity had not been impaired is speculative as a matter of law. *See, e.g., Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1333 (Fed. Cir.2003); *Millgard Corp. v. E.E. Cruz/Nab/Frontier–Kemper*, 2006 WL 1699528 (S.D.N.Y. No. 99–CIV–2952, June 21, 2006) (unpublished memorandum and order); *Mega Constr. Co., Inc. v. United States*, 29 Fed.Cl. 396, 474–75 (1993); *Lucas v. United States*, 25 Cl.Ct. 298, 310 (1992); *Solar Turbines, Inc. v. United States*, 23 Cl.Ct. 142, 159–60 (1991); *Rhen v. United States*, 17 Cl.Ct. 140, 143–44 (1989); *Olin Jones Sand Co. v. United States*, 225 Ct.Cl. 741, 743–44 (1980); *Rocky Mountain Constr. Co. v. United States*, 218 Ct.Cl. 665, 666 (1978); *Hirsch Elec. Co., Inc. v. Cmty. Servs., Inc.*, 145 A.D.2d 603, 605, 536 N.Y.S.2d 141, 142–43 (1988).

Whether a party bidding on a particular public project is successful in obtaining the contract depends on a host of factors in addition to bonding capacity. Moreover, profit on such a contract is dependent, in part, on unpredictable future events such as weather, changes in labor and material costs, and changes in management personnel, to name a few. In short, Denny's theory of lost profits is "based on inferences piled upon inferences." *Hirsch Elec. Co., supra*, 145 A.D.2d at 605, 536 N.Y.S.2d at 143; *see also Solar Turbines, Inc., supra*, 23 Cl.Ct. at 159–60; *Solar Turbines, Inc. v. United States*, 16 Cl.Ct. 304, 317 (1989); *Olin Jones Sand Co., supra*, 225 Ct.Cl. at 743–44.

We also conclude that the damages sought by Denny for lost profits were not reasonably foreseeable.

Denny elicited testimony from two representatives of Denver Water that they knew how surety bonds functioned and that they understood that adequate bonding capacity is necessary to be qualified to bid on certain public works projects. Denny argues that this testimony proves that lost profits as a result of loss of bonding capacity were a

foreseeable consequence of Denver Water's breach of contract. We disagree.

There is no evidence in the record that the parties contemplated a loss of bonding capacity when they entered into the contract, that Denver Water knew the extent of Denny's bonding capacity, that Denver Water knew Denny's overall financial condition, or that Denver Water knew what effect declaring Denny in default would have on Denny's bonding capacity and future business prospects. Absent such evidence, we cannot conclude that the parties foresaw a reasonable possibility that Denny could lose its bonding capacity and, in turn, lose profits it might have earned on future public projects it had not bid on and not been awarded. *See Rocky Mountain Constr. Co., supra,* 218 Ct.Cl. at 666; *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,* 34 Cal.4th 960, 971, 22 Cal.Rptr.3d 340, 102 P.3d 257, 263 (2004); *Daniel E. Terreri & Sons, Inc. v. Mahoning County Bd. of Comm'rs,* 152 Ohio App.3d 95, 786 N.E.2d 921, 935–37 (2003).

Accordingly, we reverse the award of damages in favor of Denny for lost profits in the amount of $845,000. In light of our resolution of this argument, we need not address Denver Water's alternative argument that Denny's claim for lost profits is barred by the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S.2006.

### C. Excessive Damages

■ Denver Water argues that the award of damages for costs, expenses, and unreimbursed payments incurred by ICW as a result of Denver Water's claim against the performance bond ($152,000) is excessive as a matter of law because it exceeds the amount Denny indicated it was seeking in the proposed trial management order ($60,000). We conclude that Denver Water did not preserve this issue for review.

Denver Water did not object at trial to Denny's presentation of evidence of the amount of damages within this category, nor did it object to Denny's counsel's request for such damages in closing argument. Denver Water did not raise the issue until after judgment, when it filed a motion for an amendment of the judgment pursuant to

C.R.C.P. 59. Accordingly, Denver Water waived the issue. *See Eat–A–Bite, Inc. v. Buechner,* 114 Colo. 179, 181, 163 P.2d 198, 198 (1945) (objection to variance between pleading and proof is waived if not raised at trial); *Sandberg v. Borstadt,* 48 Colo. 96, 100, 109 P. 419, 421 (1910) (party waived objection to testimony that value of sewing machine was $70, but that complaint alleged value was $50, where no objection was made at trial); *Allen v. Am. Family Mut. Ins. Co.,* 80 P.3d 799, 804 (Colo.App.2002) (objections to damages instructions waived if not presented before instructions submitted to jury), *aff'd in part and rev'd in part on other grounds,* 102 P.3d 333 (Colo.2004); *Agnew v. Mathieson,* 26 Colo.App. 59, 62–63, 140 P. 484, 485 (1914) (contention of surprise at trial was waived where no objection to evidence was made before filing of motion for new trial); *Outcalt v. Johnston,* 9 Colo.App. 519, 521, 49 P. 1058, 1060 (1897) (same as *Agnew* ).

### III. Denny's Cross–Appeal

■ On cross-appeal, Denny argues that the trial court erred in denying its request for costs from Denver Water. We disagree.

The trial court ruled that costs may not be assessed against a political subdivision of the state where liability is premised on a breach of contract. This is a legal issue, which we review de novo. *See Farmers Reservoir & Irrigation Co. v. City of Golden,* 113 P.3d 119, 130 (Colo.2005); *Branch v. Colo. Dep't of Corrections,* 89 P.3d 496, 498 (Colo.App. 2003).

■ C.R.C.P. 54(d) provides that "costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law." *See also* C.A.R. 39(b). Rule 54(d) "requires an explicit legislative provision that specifically and clearly indicates the intent of the legislature to authorize costs against a public entity." *Farmers Reservoir & Irrigation Co., supra,* 113 P.3d at 132.

■ " '[C]osts may be awarded against the State where there is an express legislative provision for costs against the State or where the State is in the position of a party

litigant against whom costs are otherwise legislatively authorized to be awarded.' " *Farmers Reservoir & Irrigation Co., supra,* 113 P.3d at 130 (quoting *Waters v. Dist. Court,* 935 P.2d 981, 990 (Colo.1997)). "However, that a State is in the position of a party litigant is not, by itself, sufficient to assess costs against it." *Farmers Reservoir & Irrigation Co., supra,* 113 P.3d at 130. "Rather, absent an express provision, there must also exist a 'substantive legislative authorization' tantamount to an express provision indicating a specific and clear legislative intent to assess costs against public entities." *Farmers Reservoir & Irrigation Co., supra,* 113 P.3d at 130 (quoting in part *Waters, supra,* 935 P.2d at 990).

Denny contends that § 24–10–107, C.R.S. 2006, is an express legislative authorization to award costs against a public entity in a contract action. We are not persuaded.

Section 24–10–107 provides that ·"where sovereign immunity is not a bar under section 24–10–106, liability of the public entity shall be determined in the same manner as if the public entity were a private person." This provision has been interpreted as authorizing an award of costs against a public entity in a tort action that is not barred by governmental immunity. *Nguyen v. Reg'l Transp. Dist.,* 987 P.2d 933, 935 (Colo.App. 1999).

As noted, § 24–10–107 applies "where sovereign immunity is not a bar under section 24–10–106." The latter section waives sovereign immunity for certain tort actions; it does not address contract actions. Reading the two sections together, as we must, *see Richmond Petroleum, Inc. v. Oil & Gas Conservation Comm'n,* 907 P.2d 732, 734 (Colo. App.1995), we conclude that § 24–10–107 merely provides that a public entity's liability in a tort action is to be determined in the same manner as if the entity were a private person where such a tort action is not barred under § 24–10–106. It does not amount to an explicit legislative authorization to assess costs against a public entity in a contract action.

In the alternative, Denny argues that because public entities do not have sovereign immunity from contract actions, sovereign immunity from costs in such actions has been implicitly waived. We disagree.

Denny's argument ignores governing law holding that a waiver of sovereign immunity for costs must be express. *Farmers Reservoir & Irrigation Co., supra,* 113 P.3d at 130; *Waters, supra,* 935 P.2d at 990. It does not necessarily follow, in this context, that a public entity's liability for damages for breach of contract renders it liable for costs incurred in a breach of contract action. Such costs are not damages. *See Steele v. Law,* 78 P.3d 1124, 1129 (Colo.App.2003). Thus, a public entity can be liable for the former without necessarily being liable for the latter, and there is no liability for the latter absent a specific and clear legislative authorization.

Accordingly, the trial court did not err in denying Denny's request for costs.

### IV. Denver Water's Request for Attorney Fees

Denver Water requests an award of its attorney fees incurred in connection with Denny's cross-appeal. *See* § 13–17–101, et seq., C.R.S.2006; C.A.R. 38. Because we conclude that Denny's cross-appeal is not substantially frivolous, groundless, or vexatious, we deny that request.

### V. Conclusion

The judgment is reversed as to the award of damages for lost profits, and otherwise affirmed. The trial court's order denying Denny's request for costs is affirmed. The case is remanded for further proceedings consistent with this opinion.

Judge VOGT and Judge CARPARELLI concur.