23CA2060 Molina v Cahill 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2060
Fremont County District Court No. 23CV1025
Honorable Lynette M. Wenner, Judge

Daniel Emilio Molina,

Plaintiff-Appellant,

v.

William Cahill,

Defendant-Appellee.

APPEAL DISMISSED IN PART, JUDGMENT AFFIRMED IN PART,
REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Daniel Emilio Molina, Pro Se

William Cahill, Pro Se

¶ 1 Plaintiff, Daniel Emilio Molina, appeals the district court's judgment granting the motion to dismiss filed by defendant, William Cahill, and awarding Cahill attorney fees under section 13-17-201(1), C.R.S. 2024. We affirm the district court's dismissal of four of Molina's claims — breach of contract, unjust enrichment, tortious interference with contractual relations, and declaratory judgment — based on a lack of subject matter jurisdiction, although we conclude that those claims should not have been dismissed with prejudice. With respect to Molina's fifth claim — intentional infliction of emotional distress (IIED) — we affirm the district court's dismissal with prejudice. And because it is premature in the absence of a final appealable order, we dismiss Molina's appeal of the district court's order granting Cahill's request for a fee award.

## I. Background

¶ 2 We draw the following factual background from the record on appeal, including the allegations in Molina's complaint.

¶ 3 In December 2016, Cahill agreed to sell a parcel of land to Hotwire H. Ranch, LLC (Hotwire) via an installment land contract. The parties to the contract, which had a ten-year payment schedule

1

and a sale price of $95,000, were Cahill and Hotwire. Hotwire is a limited liability company (LLC) solely owned by Molina, who is also the LLC's only member. Separately, Molina Management LTD (Molina Management) — which is also an LLC — reached agreements to receive monthly rent from tenants residing on the parcel of land. As is true for Hotwire, Molina is the sole owner and only member of Molina Management.

¶ 4     In February 2023, Cahill told Molina that his health was deteriorating and that he might die before Molina finished making installment payments under the contract. Cahill also told Molina that his family had "pushed back when [he] mentioned to them" that he planned on sending Molina a quitclaim deed to the property when the payments were complete. Negotiations ensued, with Cahill offering to buy out Molina's interest in the land (for far less than the amount Molina had already paid under the contract) and Molina offering to pay off the contract's remaining balance in exchange for a warranty deed. In April 2023, Cahill informed Molina that he believed the "contract [was] broken" and that he was unwilling "to provide a bill of sale or a warranty deed." Cahill indicated they may need to "go before a judge."

¶ 5    Molina, acting in his personal capacity, filed suit against Cahill and asserted the following claims for relief: (1) breach of the installment land contract; (2) failure to comply with requirements for escrow agent designation and written notice filing under section 38-35-126(3), C.R.S. 2024; (3) unjust enrichment; (4) tortious interference with the contract between Molina Management and its tenants; and (5) IIED.

¶ 6    Cahill moved to dismiss Molina's first four claims under C.R.C.P. 12(b)(1), arguing that Molina lacked standing in his personal capacity to sue Cahill for Cahill's alleged conduct against the interests of Hotwire and Molina Management. Cahill emphasized that Molina "was never a party to either the [c]ontract or the [l]ease in his individual capacity." Additionally, Cahill moved to dismiss Molina's claim for IIED under C.R.C.P. 12(b)(5) because Molina failed to state a claim upon which relief could be granted. Specifically, Cahill argued that "the mere fact that [Cahill] informed [Molina] that he would not agree to [Molina]'s request to pay the remaining balance of the contract price in exchange for the warranty deed . . . in no conceivable way rises to the level of outrageousness and intolerableness [required] to sustain" the IIED

3

claim. Moreover, Cahill argued that Molina's IIED claim was precluded by the economic loss rule (which we describe below).

¶ 7    The district court granted the motion to dismiss. Regarding Molina's first four claims, the court explained that Hotwire and Molina Management, not Molina, were the parties to the relevant contracts, that Molina's interest in the contracts was limited to his share of profits and losses and the right to receive distributions of company assets, and that he had no right to demand and receive distributions from the companies in any form other than cash. In addition, because both entities are LLCs, the court concluded that they could not "function . . . as extensions of [Molina] in his personal capacity" and that, as a result, they needed to be represented by counsel "unless the necessary statutory requirements are satisfied." *See* § 13-1-127(1)(a), (2), C.R.S. 2024. The court also considered and rejected Molina's argument that he should be permitted to proceed in his individual capacity by relying on agreements that purported to assign Hotwire's installment land contract and Molina Management's lease to Molina. The court specifically found that the agreements were invalid and failed to transfer to Molina either entity's right to proceed in the litigation.

¶ 8    Turning to Molina's IIED claim, the district court reasoned that the claim was precluded by the economic loss rule because Molina failed to "establish[] that [Cahill] had any independent duty to [Molina]." And because Cahill "had no duty to prevent [Molina] from experiencing emotional distress or [physical symptoms] as the result of bad news or uncertainty," it followed that Molina's IIED claim was "intertwined inextricably with his claim that [Cahill] breached the [c]ontract." In any event, the district court found, nothing in the pleadings showed that "the alleged conduct [wa]s so outrageous and extreme in degree as to support the claim as a matter of law."

¶ 9    The district court dismissed Molina's complaint "in its entirety with prejudice" and awarded attorney fees pursuant to section 13-17-201(1). The court did not, however, reduce its fee award to a sum certain before Molina filed his notice of appeal.

¶ 10   Molina filed a motion to reconsider, citing C.R.C.P. 121, section 1-15(11). In the motion, he argued for the first time that (1) amendments he made to the assignment agreements and to the LLCs' operating agreements following the district court's dismissal order resolved the agreements' previous shortcomings; and (2) in

order to remedy his lack of standing to personally sue under contracts to which he was not a party, the district court should "pierc[e] the corporate veil of his LLCs and tak[e] the stance that [Molina] is the alter ego of the LLCs."

¶ 11    The district court denied Molina's motion to reconsider. It noted at the outset that, because its dismissal order was not interlocutory, the motion was cognizable under C.R.C.P. 59 or 60 rather than C.R.C.P. 121, section 1-15(11). The district court then considered Molina's motion under both rules. Applying C.R.C.P. 59, the court concluded that the only potential ground for relief was the discovery of new evidence, in the form of the amended assignment agreements and operating agreements. But because these agreements were prepared after the case was dismissed, the court concluded they were not newly discovered evidence.

¶ 12    As for C.R.C.P. 60(b)(1), the court observed that Molina failed to argue for any of the potential grounds for relief specified by that rule, "relying instead on dubious claims of new evidence, objections to the legal reasoning of the [c]ourt's [o]rder, and arguments regarding . . . 'clear error,' manifest injustice, and the need to decide this matter on the merits."

## II.    Preservation

¶ 13    At the outset, we note that Molina failed to preserve three of his appellate contentions for appeal.  Preservation is a threshold question; we do not review issues that are insufficiently preserved. *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22.  Generally, to preserve an issue for appeal, a party "must make a timely and specific objection or request for relief in the district court."  *Id.* at ¶ 25.  Thus, arguments raised for the first time on appeal are not preserved.  *See Keith v. Kinney*, 140 P.3d 141, 153 (Colo. App. 2005).

¶ 14    Likewise, arguments first made in a post-trial motion "are too late and, consequently, are deemed waived for purposes of appeal." *Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66; *see also Denny Constr., Inc. v. City & Cnty. of Denver*, 170 P.3d 733, 740 (Colo. App. 2007) (arguments presented for the first time in a C.R.C.P. 59 motion are insufficient for preservation on appeal), *rev'd on other grounds*, 199 P.3d 742 (Colo. 2009); *Ortiz v. Valdez*, 971 P.2d 1076, 1079-80 (Colo. App. 1998); *Landmark Towers Ass'n v. UMB Bank, N.A.*, 2018 COA 100, ¶ 45.  And where an argument raised during earlier proceedings differs from an argument raised in a motion for post-trial relief, the previously

raised argument is insufficient to preserve the post-trial argument for appeal. *See Fid. Nat'l Title Co. v. First Am. Title Ins. Co.*, 2013 COA 80, ¶ 51.

### A. Piercing the Corporate Veil

¶ 15    First, Molina contends that the district court erroneously refused to pierce the corporate veil of Hotwire and Molina Management by failing to find that he was the alter ego of these entities with standing to sue on their behalf — a concept known as "[i]nsider reverse veil-piercing." *McKay v. Longman*, 211 A.3d 20, 46 (Conn. 2019). Because Molina raised this argument for the first time in his motion to reconsider, however, we conclude that he did not properly preserve it and do not consider it further. *See Nelson*, ¶ 66.

### B. Dismissal of Tortious Interference with Contract Claim

¶ 16    Second, Molina contends that the district court erred by dismissing his claim of tortious interference with contract. Specifically, he asserts that the district court should have allowed him to represent the interests of the two LLCs with respect to this claim because the amount of damages that he sought for tortious interference — $12,000 — fell below the $15,000 threshold set forth

in section 13-1-127(2)(a) ("[A] closely held entity may be represented before any court of record . . . by an officer of such closely held entity if," among other things, "[t]he amount at issue in the controversy or matter before the court or agency does not exceed fifteen thousand dollars.").

¶ 17    Once again, irrespective of the merits of this argument, Molina raised it for the first time in his motion to reconsider; it is therefore waived for purposes of appeal.[1]  *See Nelson*, ¶ 66.

### C.    Constitutionality Challenge

¶ 18    Third, Molina asserts that section 13-1-127(2)(a) — which establishes several exceptions to the general rule that entities must be represented by counsel — violates due process and equal protection under both the United States and Colorado Constitutions.  However, Molina did not raise this argument in the

---

[1] We acknowledge that in paragraph eighty-eight of his amended complaint (which appears in the "Factual Allegations" section), Molina alleged that he "is incurring a loss of $12,000 due to William Cahill's refusal to honor the terms of the land installment contract at issue in this case."  But nothing in the tortious interference claim itself suggests that Molina seeks only that amount.  To the contrary, Molina's tortious interference claim seeks "pecuniary damages," "consequential damages," "emotional distress damages," and "punitive damages" without suggesting any specific limitation on the amounts sought.

trial court, and we do not consider arguments raised for the first time on appeal.  *See Keith*, 140 P.3d at 153.

### III.  Molina's Motion to Reconsider

#### A.  The District Court Addressed Molina's Motion on the Merits

¶ 19    Molina contends that the district court erred by "refusing to consider" his motion to reconsider simply because the motion incorrectly referenced C.R.C.P. 121 rather than C.R.C.P. 59 or 60. As we understand Molina's argument, he maintains that the district court rejected his motion on this technical ground despite his clarification in subsequent briefing that his motion was in fact made pursuant to C.R.C.P. 59 and 60.  His argument, however, is at odds with the record.  As we have already discussed, not only did the district court consider the merits of Molina's motion, but it specifically analyzed his arguments under C.R.C.P. 59 and 60, denying the motion only after finding that relief was not warranted under either rule.  To the extent that Molina raises new arguments on appeal about why he should have been granted relief under C.R.C.P. 59 or 60, we decline to consider them.  *See Keith*, 140 P.3d at 153.

#### B.  The Amended Assignment Agreements

¶ 20    Molina also argues that the district court erred by "not recognizing the effect of" the assignment agreements that were amended after the district court's dismissal order and attached as "new evidence" to his post-trial motion.  As best we can tell, Molina takes issue with the district court's refusal to give effect to the amended agreements in denying his motion for reconsideration.

¶ 21    In its order, the district court explained that because the amended agreements were prepared and signed by Molina after the dismissal order was entered, they were not newly discovered evidence potentially justifying reconsideration of that order.  To rule otherwise, the court reasoned, "would allow litigants to create their own new evidence after the fact."  Alternatively, the court stated, if the agreements had been prepared and signed by Molina before the dismissal order, then Molina "failed to explain why he was not able to produce" them before it ruled on the motion to dismiss.

¶ 22    We perceive no abuse of discretion in this ruling.  *See Zolman v. Pinnacol Assurance*, 261 P.3d 490, 502 (Colo. App. 2011) ("A trial court has considerable discretion in ruling on a motion for new trial, and its ruling will not be disturbed absent a clear showing of an abuse of discretion.").

¶ 23    To succeed on a C.R.C.P. 59 motion grounded on newly discovered evidence, the moving party must establish that the new evidence could not have been discovered through the exercise of reasonable diligence, was material, and would probably change the result. *Aspen Skiing Co. v. Peer*, 804 P.2d 166, 172 (Colo. 1991). The motion must be supported by an affidavit. C.R.C.P. 59(d)(6); *see also People in Interest of E.H.*, 837 P.2d 284, 288 (Colo. App. 1992). The failure to establish any one of the factors outlined in the rule requires the denial of the motion. *Peer*, 804 P.2d at 172.

¶ 24    Here, even assuming that the updated agreements could be considered "newly discovered" evidence as contemplated by C.R.C.P. 59(d), Molina's motion did not explain why they could not have been previously discovered through the exercise of reasonable diligence, nor did he comply with the rule's procedural requirement that he do so via an affidavit. Given these deficiencies, the district court acted within its discretion when it declined to grant Molina's request for post-trial relief.

## IV.    Dismissal of IIED Claim

¶ 25    Molina next alleges that the district court erroneously dismissed his IIED claim. Specifically, he maintains that Cahill

12

owed him an independent duty of care and that Cahill's conduct was sufficiently outrageous to sustain this claim. We disagree.

### A. Standard of Review and Applicable Law

¶ 26 We review de novo a district court's ruling on a motion to dismiss. *Patterson v. James*, 2018 COA 173, ¶ 16. We apply the same standards as the district court, accepting the complaint's factual allegations as true and viewing those allegations in the light most favorable to the plaintiff. *Id.* A court may dismiss a complaint under C.R.C.P. 12(b)(5) if the factual allegations do not, as a matter of law, support a claim for relief. *Froid v. Zacheis*, 2021 COA 74, ¶ 17.

¶ 27 To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts that, if proven, would establish that (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant did so recklessly or with intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). This theory creates liability in only very limited circumstances, where the conduct was "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

¶ 28    Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question. *Culpepper*, 877 P.2d at 883; *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (affirming trial court's order granting motion to dismiss outrageous conduct claim "[a]s a matter of law" because "no reasonable person could find" defendant's actions "arose to the high level of outrageousness required by our case law"); *First Nat'l Bank in Lamar v. Collins*, 616 P.2d 154, 155-56 (Colo. 1980).

¶ 29    And "[w]hether the economic loss rule precludes a particular claim raises a legal issue subject to de novo appellate review." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143, ¶ 35 (quoting *In re Estate of Gattis*, 2013 COA 145, ¶ 10).

¶ 30    "Broadly speaking, the economic loss rule is intended to maintain the boundary between contract law and tort law." *Town of*

14

*Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). To identify whether contract or tort law applies to a particular claim, courts look to the source of the duty that the defendant allegedly breached. *Id.* at 1262. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Id.* (citation omitted).

¶ 31    A claim "based on a recognized independent duty of care" does not fall within the scope of the rule. *Id.* at 1263. That exception applies when "special relationships . . . automatically trigger an independent duty of care." *Id.* (noting that some relationships, such as the attorney-client, physician-patient, and insurer-insured relationships, "by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship"). Thus, a plaintiff may assert a tort action if the alleged breach of contract also implicates an independent duty of care. *Id.*

### B.    Analysis

¶ 32    As an initial matter, both parties assert that this issue is preserved, and we agree.

¶ 33     In its dismissal order, the district court provided two reasons for dismissing Molina's IIED claim: (1) the economic loss rule prohibited the claim because Molina failed to show that Cahill owed him an independent duty of care, and (2) the conduct alleged by Molina was not "so outrageous and extreme in degree as to support the claim as a matter of law."

¶ 34     On appeal, Molina argues that Cahill did in fact owe him a duty of care independent from their contract, and, as a result, the economic loss rule does not apply.  However, he cites no case law, and we are aware of none, stating that his relationship with Cahill as a purchaser of land triggers a "recognized independent duty of care." *Town of Alma*, 10 P.3d at 1263.  Rather, Molina appears to argue that we should recognize a new independent duty of care "in light of [Cahill's] promises that he and his family could be trusted" and because Molina is younger than Cahill and had less experience with land purchases at the time of their contract.  We conclude as a matter of law that these circumstances alone would not establish an independent duty of care sufficient to support Molina's tort claim.

¶ 35    Molina also contends that Cahill's conduct was sufficiently outrageous to sustain his IIED claim because of his status as a disabled combat veteran.  However, our analysis of outrageousness is focused not on the identity of the individual bringing an IIED claim but instead on the nature of the alleged conduct; specifically, we consider whether Cahill's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Churchey*, 759 P.2d at 1350 (quoting *Rugg*, 476 P.2d at 756).  Like the district court, we cannot conclude that the allegations that Cahill breached his contract with Molina satisfy this high standard.

¶ 36    We discern no error by the district court in its dismissal of Molina's IIED claim.

## V.    Dismissal with Prejudice

¶ 37    Molina contends that the district court erred by dismissing with prejudice the four claims that the district court found he had no standing to bring (breach of contract, unjust enrichment, tortious interference with contractual relations, and declaratory

17

judgment). Cahill concedes that the district court should have dismissed these claims without prejudice. We agree.

¶ 38 A motion to dismiss for lack of standing is brought pursuant to C.R.C.P. 12(b)(1) and impacts a court's subject matter jurisdiction. *See Pueblo Sch. Dist. No. 60 v. Colo. High Sch. Activities Ass'n*, 30 P.3d 752, 753 (Colo. App. 2000) ("A court does not have subject matter jurisdiction if a plaintiff lacks standing to invoke its judicial power."). And "[g]enerally, a dismissal for lack of jurisdiction does not bar subsequent proceedings and, thus, dismissal with prejudice is improper." *Woo v. El Paso Cnty. Sheriff's Off.*, 2020 COA 134, ¶ 29, *aff'd*, 2022 CO 56. "This principle reflects the possibility that the plaintiff may be able to refile the complaint (in the same court or another) and plead facts that cure the jurisdictional defect." *Id.*

¶ 39 We therefore remand the case with directions to amend the judgment to reflect that the dismissal of Molina's four non-IIED claims is without prejudice.

## VI. Attorney Fees Award

¶ 40 Molina also contends that the district court erred when it determined that Cahill was entitled to attorney fees pursuant to

section 13-17-201.  Although the district court has ruled that Cahill is entitled to a fee award, it did not reduce its order to a sum certain by awarding a specific amount of fees before Molina filed his notice of appeal.  Any fee award is therefore not ripe for appellate review.  *Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo. App. 2007).  We therefore must dismiss Molina's appeal of the trial court's fee award as premature.[2]

## VII.   Appellate Attorney Fees

¶ 41    Cahill seeks an award of appellate attorney fees based on his successful defense of the district court's order dismissing Molina's complaint under C.R.C.P. 12(b).  In contrast to the district court's award of fees under section 13-17-201, this issue is properly before us.  *See Wark v. Bd. of Cnty. Comm'rs*, 47 P.3d 711, 717 (Colo. App. 2002) ("A party who successfully defends . . . a dismissal order

---

[2] Although we do not reach the merits of the district court's award of fees, we note that Cahill requested fees under section 13-17-102(6), C.R.S. 2024, arguing that Molina knew or should have known "that his action was substantially frivolous or groundless." The court, however, awarded fees under section 13-17-201, C.R.S. 2024.  We conclude below that the fee-shifting provisions of section 13-17-201 do not apply to Molina's complaint, and therefore deny Cahill's request for appellate fees on that basis.

[subject to section 13-17-201] is also entitled to recover reasonable attorney fees incurred on appeal.").

¶ 42     For the reasons below, we decline to award Cahill his appellate attorney fees.

## A.     Standard of Review

¶ 43     "Whether a statute," such as section 13-17-201, "mandates an award of costs or attorney fees is a question of statutory interpretation and is thus a question of law we review de novo." *Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo. 2010).

## B.     Section 13-17-201 does not Apply Because the "Essence" of Molina's Case was a Contract Claim

¶ 44     As relevant to this case, section 13-17-201(1) states that, "[i]n all actions brought as a result of . . . an injury to . . . property occasioned by the tort of any other persons," a defendant "shall have judgment for his reasonable attorney fees in defending the action," if the action is dismissed on any ground pursuant to a defendant's C.R.C.P. 12(b) motion.  Fee-shifting is mandatory under this provision in cases involving the dismissal of a complaint that asserts tort claims.  *Wark*, 47 P.3d at 717.

¶ 45    "When a plaintiff has pleaded both tort and non-tort claims,"

however, "a court must determine, as a matter of law, whether the

essence of the action was one in tort, in order to ascertain if section

13-17-201 applies." *Castro v. Lintz*, 2014 COA 91, ¶ 16.  To make

this determination, the court should

> first apply the "predominance" test, assessing
> whether the "essence of the action" is tortious
> in nature (whether quantitatively by simple
> number of claims or based on a more
> qualitative view of the relative importance of
> the claims) or not.  The [c]ourt would then turn
> to the question of whether [the] tort claims
> were asserted to unlock additional remedies
> only where the predominance test failed to
> yield a clear answer, such as when the tort-
> and non-tort claims are equal in number or
> significance.

*Gagne v. Gagne*, 2014 COA 127, ¶ 84 (citation omitted)).  "[T]he

court should rely on the pleading party's characterization of its

claims and should not consider what the party should or might

have pleaded." *Id.* at ¶ 81.

¶ 46    Here, the "predominance test" described in *Gagne* yields a

clear answer: The "essence" of this case sounds in contract rather

than tort.  All of Molina's claims center on his allegation that Cahill

breached his agreement to sell the subject property to an entity

21

owned by Molina. Only two of the five claims sound in tort and because both depend on the alleged breach of contract, they are in our view less important to Molina's case than his claim that the contract was breached. *Cf. CAMAS Colo., Inc. v. Bd. of Cnty. Comm'rs*, 36 P.3d 135, 138 (Colo. App. 2001) ("In determining whether a claim is contractual or lies in tort, a court should examine whether the claim and the duty allegedly breached arise from the terms of the contract itself.").

¶ 47 Because Molina's lawsuit was prompted by Cahill's alleged breach of contract, and because his tort claims are ancillary to, and dependent on, that alleged breach, the essence of the case is contractual. The fee-shifting requirements of section 13-17-201 therefore do not apply, and we decline to grant Cahill's request for an award of appellate attorney fees.

## VIII. Disposition

¶ 48 We dismiss the portion of the appeal challenging the district court's determination that Cahill is entitled to attorney fees and deny Cahill's request for an award of appellate attorney fees. We affirm the dismissal of Molina's complaint but reverse the district court's judgment to the extent that it dismissed with prejudice

22

Molina's claims for breach of contract, unjust enrichment, tortious interference with contractual relations, and for entry of a declaratory judgment. We remand the case with instructions to the district court to amend the judgment to reflect that those claims were dismissed without prejudice.

JUDGE FREYRE and JUDGE LUM concur.