The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 27, 2021

**2021COA74**

**No. 20CA0021, *Froid v Zacheis* — Attorneys and Clients — Malpractice — Economic Damages; Family Law — Grandparents — Visitation Rights**

Distinguishing *McGee v. Hyatt Legal Services, Inc.*, 813 P.2d 754 (Colo. App. 1990), the division holds that economic damages are available in legal malpractice lawsuits involving grandparent visitation rights.

COLORADO COURT OF APPEALS                                    **2021COA74**

Court of Appeals No. 20CA0021
Weld County District Court No. 19CV30511
Honorable Todd Taylor, Judge

Cheryl Froid and Brian Froid,

Plaintiffs-Appellants,

v.

Kristin Zacheis and Houtchens Greenfield Sedlak & Zacheis, LLC

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GROVE
Fox and Harris, JJ., concur

Announced May 27, 2021

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Plaintiffs-
Appellants

Gordon & Rees LLP, John M. Palmeri, John R. Mann, Margaret Boehmer,
Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiffs, Cheryl and Brian Froid, appeal the dismissal of their complaint alleging legal malpractice against their former attorney, Kristin Zacheis, and her law firm, Houtchens, Greenfield, Sedlak & Zacheis LLC (collectively, Zacheis).  We affirm in part, reverse in part, and remand the case for further proceedings.

## I.     Background

¶ 2     We draw the following facts from the Froids' amended complaint (the complaint).

¶ 3     This case stems from a tragic automobile crash that killed Jared and Genevieve Sommervold and orphaned their two-year-old daughter (the child).  The Froids are the child's maternal grandparents.  Their daughter, Kathryn Arnold, is the child's aunt.

¶ 4     The Froids cared for the child immediately after the crash; a short time later, Cheryl Froid and the child's paternal grandmother were named co-guardians on a temporary basis.

¶ 5     The Froids then engaged Zacheis to represent both them and the child's aunt and her husband (the Arnolds).  Zacheis filed a petition for allocation of parental responsibilities (APR), naming the Arnolds as petitioners and Cheryl Froid and the child's paternal grandmother (who were still temporary co-guardians) as

1

respondents. Shortly thereafter, Zacheis moved to intervene on behalf of Brian Froid,[1] and then, on behalf of all of her clients, filed motions intended to modify the temporary co-guardianship and place the child in the Froids' primary care and custody.

¶ 6 Additional motions followed, but before a major legal battle erupted over custody of the child, the parties decided to mediate with the goal of agreeing on a permanent parenting plan. At the mediation, Zacheis continued to represent both the Froids and the Arnolds. The paternal grandmother had her own counsel, as did other members of the paternal side of the family.

¶ 7 In their amended complaint, the Froids alleged that their "main goal all through the litigation and mediation, which they expressed to Ms. Zacheis on multiple occasions, was to be able to spend the most time with [the child]." They were thus concerned that the draft agreement created during the mediation did not expressly provide them with visitation rights — an accommodation that was included for the paternal grandmother, and that they

---

[1] The complaint does not state whether Brian Froid intervened as a petitioner or respondent.

2

alleged would have likely been granted them had Zacheis insisted on it. However, when they raised the issue with Zacheis, she "incorrectly told the Froids that they did not need their visitation rights expressly stated because they could go see [the child] anytime she was with [the Arnolds]."

¶ 8    Zacheis's prediction, the complaint alleged, turned out to be inaccurate. At some point after the permanent parenting plan was finalized and approved by the district court, the Arnolds cut the Froids off from the child completely. With no visitation rights reserved in the permanent parenting plan, the Froids had to hire a new attorney to seek grandparent visitation rights. Had Zacheis accurately advised them, the Froids alleged, they would not have incurred these additional legal fees.

¶ 9    The Froids sued Zacheis and her law firm and, in their amended complaint, alleged a single count of legal malpractice. Although not clearly differentiated in the complaint, that count was based on two distinct theories: negligence and breach of fiduciary duty. The negligence theory was straightforward, asserting that Zacheis fell below the standard of care "by failing to consider the possibility that the family would have a falling out, and that

therefore the visitation interests of the Froids needed to be expressly protected in the Permanent Parenting Plan." The fiduciary duty theory was based on Zacheis's representation of both the Froids and the Arnolds. The complaint averred that Zacheis breached her duty of undivided loyalty when she agreed to represent both families despite the fact "that these parties had conflicting interests," and that this conflict came to a head when Zacheis "protected the interests of the Arnolds at the expense of the Froids' interests . . . ."[2]

¶ 10     If Zacheis had insisted on incorporating their express visitation rights into the plan, the Froids alleged, the "other parties to that Plan likely would have agreed to those express visitation rights." And likewise, the Froids claimed, if express visitation rights had been incorporated into the draft plan that was presented to the

---

[2] Because the Froids do not assert on appeal that the district court should have differentiated between the negligence and fiduciary theories when considering the motion to dismiss, we consider only their general claim for legal malpractice without distinguishing between the two theories. In any event, we note that when a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim will ordinarily be dismissed as duplicative. *See Aller v. Law Off. of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27 (Colo. App. 2005).

court, "the trial court would likely have adopted" the plan as written.

¶ 11    The Froids demanded both economic and noneconomic damages. The alleged economic damages included (1) the fees that they paid Zacheis "throughout the custody proceedings"; (2) the fees paid for the mediation, during which Zacheis "had a conflict of interest" and negligently represented them; and (3) the fees that the Froids "paid to successor counsel in order to secure grandparent visitation rights," which could have been secured at the mediation absent Zacheis's alleged malpractice. The Froids' alleged noneconomic losses were those "associated with the complete loss of contact with their beloved granddaughter."

¶ 12    Zacheis filed a motion to dismiss. Relying primarily on *McGee v. Hyatt Legal Services, Inc.*, 813 P.2d 754 (Colo. App. 1990), she argued that "[i]ssues of custody are best determined by the domestic court in accordance with the best interests of the child," and that, as a result, "[noneconomic] damages arising from custodial orders are not compensable and attorney fees related to such orders are not recoverable."

¶ 13 In their response, the Froids asserted that *McGee* was wrongly decided insofar as it held that noneconomic damages could not be recovered in child custody cases. And, as for economic damages, the Froids maintained that *McGee* did not impose a general bar on legal malpractice claims arising from custodial orders. Thus, the Froids argued, even if they could not recover damages for loss of grandparental consortium with the child, their claims for economic damages — including recovery of fees paid to Zacheis and successor counsel — remained viable.

¶ 14 The district court granted the motion to dismiss. Concerning the Froids' claim for noneconomic damages, the court agreed with Zacheis that *McGee* controls. "[U]nder *McGee*," the court concluded, "the damages the Froids seek are unrecoverable." Notably, however, the court expressly declined to consider whether *McGee* also bars the Froids' claim for economic damages. Instead, the court concluded that the complaint did not plausibly link Zacheis's alleged malpractice to the economic damages that the Froids asserted. As the court put it, the Froids'

> failure to allege facts from which it can be reasonably inferred that they would have successfully obtained visitation rights but for

6

the conflict of interest that they allege Zacheis labored under, or but for her failure to predict the falling out with their daughter and son-in-law, is fatal to the Froids' malpractice claim.

¶ 15    The Froids then filed a motion under C.R.C.P. 59, arguing that the district court had overlooked the causation allegations laid out in the complaint.  After the court denied the motion for reasons that we will discuss in further detail below, the Froids filed this appeal.

## II.    Standard of Review

¶ 16    We review de novo a district court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim.  *Bewley v. Semler*, 2018 CO 79, ¶ 14.

¶ 17    A claim may be dismissed under C.R.C.P. 12(b)(5) if the substantive law does not support it, *W. Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo. App. 2008), or if the plaintiffs' factual allegations do not, as a matter of law, support a claim for relief, *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011).

¶ 18    In resolving a motion to dismiss, a court may consider only the facts alleged in the complaint, documents attached to or referenced in the complaint, and matters of which the court may take judicial notice, such as public records.  *Peña v. Am. Fam. Mut. Ins. Co.*,

2018 COA 56, ¶ 14.  We accept all factual allegations in the complaint and attachments as true, viewing them in a light most favorable to plaintiff.  *See Bewley*, ¶ 14.

## III.   Analysis

¶ 19     The Froids contend that the district court erred by dismissing their claims for noneconomic and economic damages.  We affirm the dismissal of their claim for noneconomic damages, but we disagree with the district court's conclusion that they failed to state a plausible claim for relief for economic damages.  We therefore reverse the district court's order dismissing the Froids' claim for economic damages and remand the case for resolution of that issue.

### A.     Noneconomic Damages

¶ 20     The Froids contend that we should decline to follow *McGee* and hold that they are entitled to recover noneconomic damages either because *McGee* is distinguishable or, in the alternative, is no longer on sound legal footing.  We are not persuaded on either score.  *McGee* applies to the facts here, is well reasoned, and is consistent with subsequent supreme court precedent.  We therefore follow it and hold that the Froids cannot recover noneconomic damages.

### 1. Preservation

¶ 21     At the threshold, we conclude that the Froids preserved their challenge to *McGee.* In response to the motion to dismiss, they appropriately acknowledged that the decision was binding but argued that it was both wrongly decided and distinguishable. Although the district court followed *McGee*, the Froids' arguments were sufficient to preserve the issue for our review. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010).

### 2. Discussion

¶ 22     In *McGee*, the plaintiff (McGee) sued her attorney for malpractice stemming from a custody dispute that arose during a divorce. As relevant here, McGee alleged that, "because of her attorneys' negligence, there was a wrongful interference in her parental relationship with her child . . . for which she was entitled to compensatory damages." *McGee*, 813 P.2d at 758. A jury agreed and awarded her $76,000 in damages. *Id.* at 757. On appeal, however, the division rejected McGee's claim for noneconomic damages as a matter of law for two reasons: (1) the difficulty in quantifying "the intangible character of the loss and . . . in measuring damages to offset it," *id.* at 758; and (2) concerns that

9

permitting a claim for noneconomic damages in this context "would circumvent and undermine the statutory scheme which vests in the domestic relations court the authority to regulate and supervise the custody of minor children whose parents are involved in dissolution proceedings."  *Id.* (citing *In re Marriage of Segel*, 224 Cal. Rptr. 591 (Ct. App. 1986)).

¶ 23    *McGee*'s holding is consistent with Colorado's general rejection of noneconomic damages in legal malpractice actions based on negligence.  *See* 7 John W. Grund, J. Kent Miller & David S. Werber, *Colorado Practice Series: Personal Injury Torts And Insurance* § 22:20, Westlaw (3d ed. database updated Dec. 2020) ("Damages recoverable in a legal-malpractice action are generally limited to actual damages."); *see also Aller v. Law Off. of Carole C. Schriefer, P.C.,* 140 P.3d 23, 26 (Colo. App. 2005) ("Generally, damages for noneconomic losses from negligence are not recoverable unless the person claiming them is subjected to an unreasonable risk of bodily harm.").  Like the majority of states, Colorado follows the rule "that damages for emotional injuries are not recoverable if they are a *consequence* of other damages caused by the attorney's negligence or a fiduciary breach that was not an

10

intentional tort." 3 Ronald E. Mallen, *Legal Malpractice* § 21:19, Westlaw (2021 ed. database updated Jan. 2021).

¶ 24    The division's reasoning in *McGee*, and particularly its reluctance to put a price tag on custody issues, also accords with our supreme court's refusal to recognize claims of filial and parental consortium in *Elgin v. Bartlett*, 994 P.2d 411 (Colo. 1999), and *Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo. 1986). While both cases are distinguishable on their facts from the situation here, their reasoning mirrors the *McGee* division's concerns about the difficulty in quantifying the damages arising from the loss of custody caused by an attorney's malpractice. In *Elgin*, for example, the court explained that it had declined to recognize a child's claim for filial or parental consortium because of "concern[s] about the efficacy of monetary compensation as a substitute for companionship, the intangible character of the loss, the difficulty of measuring damages to offset the loss, and the risk of overlapping and multiple awards for the different interests of those affected by the injury." 994 P.2d at 418.

¶ 25    The Froids contend that *McGee* does not apply because, by noting that "some jurisdictions have permitted a claim for the *total*

11

loss of custody," the division seemingly left the door open for a claim like the one that they assert. 813 P.2d at 758-59 (citing *Talbot v. Schroeder*, 475 P.2d 520 (Ariz. Ct. App. 1970), and *McEvoy v. Helikson*, 562 P.2d 540 (Or. 1977)). But we do not read *McGee* as suggesting that a parent's eligibility for noneconomic damages in a legal malpractice case depends on the *amount* of custody that the parent receives. To the contrary, *McGee* distinguished *McEvoy* and *Talbot* by focusing on the attorneys' egregious conduct (fraud in *Talbot* and failure to comply with court orders in *McEvoy*) in those cases.

¶ 26     Alternatively, the Froids urge us to abandon *McGee* in light of what one law student wrote — in 1990 — about "an emerging trend . . . that allows a client to recover for emotional distress" in legal malpractice cases. Joseph J. Kelleher, Note, *An Attorney's Liability for the Negligent Infliction of Emotional Distress*, 58 Fordham L. Rev. 1309, 1319 (1990). But they cite only a smattering of decisions following any such trend in the intervening thirty-one years. None of these rulings is from Colorado, none endorses a grandparent's (as opposed to a parent's) claim for noneconomic damages for legal malpractice, and none undermines

12

the weighty public policy concerns animating *McGee*'s holding. Accordingly, we conclude that the district court appropriately dismissed the Froids' claims for noneconomic damages.

### B. Economic Damages

¶ 27 The Froids also contend that the district court erroneously dismissed their claim for economic damages after concluding that they did not adequately plead causation or damages. We agree.

### 1. Background

¶ 28 In her motion to dismiss, Zacheis argued that *McGee* was dispositive of all of the Froids' claims, including those for economic damages. The district court declined to address this argument, and instead dismissed the Froids' economic damages claim for failure to plausibly plead that their economic damages were caused by Zacheis's alleged malpractice. The Froids argued in their C.R.C.P. 59 motion that they had, in fact, pleaded causation, but the district court disagreed. In its order declining to reinstate the case, the district court stated that, "[e]xcept as to the fees paid to successor counsel to obtain grandparent visitation rights, the economic damages [that the Froids] seek to recover were not caused by any alleged malpractice," and that, "because the complaint alleges that

13

the plaintiffs are 'in the process' of obtaining grandparent visitation rights, their allegations as to damages and causation are speculative."

### 2. Plausibility Standard

¶ 29 "To survive summary dismissal for failure to state a claim under [C.R.C.P.] 12(b)(5), a party must plead sufficient facts that . . . suggest plausible grounds to support a claim for relief." *Patterson v. James*, 2018 COA 173, ¶ 23 (citing *Warne v. Hall*, 2016 CO 50, ¶ 24). "[W]e view the factual allegations in the complaint as true and in the light most favorable to the plaintiff . . . ." *Peña*, ¶ 15. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Warne*, ¶ 9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And "[t]he plausibility standard emphasizes that facts pleaded as legal conclusions (i.e., conclusory statements) are not entitled to the assumption that they are true." *Scott v. Scott*, 2018 COA 25, ¶ 19 (citing *Warne*, ¶¶ 9, 27).

### 3. Elements of a Legal Malpractice Claim

¶ 30 To prevail on a legal malpractice claim, a plaintiff must establish that (1) an attorney owed the plaintiff a duty of care;

14

(2) the attorney breached that duty of care; (3) the breach proximately caused an injury to the plaintiff; and (4) damages resulted. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 12; *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 27. We address only the third and fourth of these elements because the relevant orders concluded both that the Froids failed to adequately allege that Zacheis's alleged malpractice was the proximate cause of their injuries and that those injuries were in any event speculative.

### a.　Causation

¶ 31　Establishing whether an attorney's negligence caused a plaintiff's injury requires two distinct determinations: (1) whether the attorney's negligence was the actual cause (cause in fact) of the plaintiff's injury; and (2) whether the attorney's negligence was the proximate cause (legal cause) of the plaintiff's injury. *Boulders at Escalante*, ¶ 31.

¶ 32　The test for causation in fact is the "but for" test — whether, but for the attorney's alleged negligence, the harm would not have occurred. *Id.* at ¶ 32 (quoting *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985-86 (Colo. App. 2011)).

¶ 33    In the legal malpractice context, several Colorado appellate decisions have held that to prove causation in fact, the plaintiff must prove a "case within a case."  That is, the plaintiff must show that the case underlying the malpractice action would have succeeded but for the attorney's negligence.  *Id.* at ¶ 33 (collecting cases).  But when the plaintiff's claimed injury does not depend on the merits of the underlying case, the plaintiff need not prove a "case within a case."  *Id.* at ¶ 49.  In this circumstance, the plaintiff must prove that the attorney's negligence "caused him or her to suffer some financial loss or harm by applying the generally applicable test for cause in fact in negligence actions: that the plaintiff would not have suffered the harm but for the attorney's negligence."  *Id.*

¶ 34    The test for proximate cause is whether "a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct."  *Id.* at ¶ 51 (quoting *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 872 (Colo. 2002)).

¶ 35    In its order granting Zacheis's motion to dismiss, the district court concluded that the Froids had failed to adequately plead

causation because they "ma[d]e no allegation . . . that (1) the other parties in the APR case would have agreed to them being granted visitation rights, (2) that the APR court would have consented to these visitation rights, or (3) that the APR court would have granted visitation rights to the Froids over the other parties' objection." Without these allegations, the court concluded, the Froids could not show that they would have successfully obtained visitation rights "but for" Zacheis's alleged malpractice.

¶ 36 We conclude, however, that the Froids' complaint included enough factual averments to nudge the question of causation "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The crux of their complaint was that, if it had been proposed at the mediation conference, the other parties and the court would have "likely" agreed to the inclusion of a provision guaranteeing their visitation rights. Had these allegations been presented on their own, without factual support, they would have been conclusory and thus subject to dismissal. But they were buttressed by ample factual allegations, including that

- "the Froids played an important role in [the child's] life";

17

- after the accident, "[t]he Froids . . . became [the child's] de facto primary caretakers";

- the Froids had previously been granted "primary temporary decision-making authority for [the child]," and "[the child] . . . stay[ed] with the Froids most of the time";

- the parenting plan that was ultimately approved by the court "expressly stated the visitation rights of [the child's]" paternal grandmother; and

- Zacheis "incorrectly told the Froids that they did not need their visitation rights expressly protected because they had a good relationship with the Arnolds."

¶ 37 Crediting these allegations, as we must at this stage of the proceedings, we conclude that they provide enough of a factual foundation to make plausible the Froids' claim that, had Zacheis provided adequate representation, the permanent parenting plan that came out of the mediation would have protected their visitation rights. Specifically, given the Froids' close relationship with the child and the parties' amenability to expressly protecting the visitation rights of the paternal grandmother, it is entirely plausible that, had Zacheis insisted on it, the parties would have also agreed

to expressly protect the Froids' visitation rights. For the same reasons, it is also entirely plausible that, had the parties presented the court with a fully executed and agreed-to permanent parenting plan that expressly provided the Froids with visitation rights, the court would have approved it without further question. In fact, that is precisely what the court did with the parenting plan that the parties submitted — it signed an order approving that plan on the same day that the parties executed it, without holding a hearing.

¶ 38 Nor is our conclusion that the complaint plausibly alleged causation undermined by the fact that, rather than making a more definitive statement, the Froids alleged that different actions by Zacheis would have "likely" changed the outcome. Elsewhere in the complaint, the Froids asserted that they lost visitation rights to the child "[a]s a direct and proximate result of the negligent conduct of Ms. Zacheis." And, in any event, as the Froids point out, their choice of words corresponds with the burden of proof — preponderance of the evidence — that they would need to satisfy to prove their "case within a case" at trial.

## b. Damages

¶ 39 To prevail on a legal malpractice claim, a plaintiff must prove that he or she suffered damages because of an attorney's negligence. *Boulders at Escalante*, ¶ 55. Damages must be proven with "reasonable certainty." *Id.* "[R]easonable certainty" does not mean "mathematical certainty," but the plaintiff "must prove the fact of damage and provide evidence sufficient to allow a reasonable estimate of the loss sustained." *Id.* (quoting *Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1079 (Colo. App. 2002)).

¶ 40 The Froids demanded relief for three different categories of damages in their complaint: (1) the fees that they paid to Zacheis throughout the custody proceedings;[3] (2) the fees paid to successor counsel to pursue grandparent visitation rights that they maintain should have been secured at the mediation; and (3) noneconomic damages. Because we have already concluded that the district

---

[3] The Froids' complaint listed a putative fourth category of damages: "the fees paid for representing the Froids at the . . . mediation, when [Zacheis] had a conflict of interest, and also negligently failed to consider the possibility of a family rift in the future." These damages, however, are a mere subset of the Froids' general demand for a refund of the fees that they paid Zacheis "throughout the custody proceedings."

20

court correctly rejected the Froids' claim for noneconomic damages as a matter of law, we only consider their economic damages claims.

¶ 41 Because it had already concluded that the Froids had not adequately alleged causation, the district court did not address damages in its original dismissal order. In its order denying the Froids' C.R.C.P. 59 motion, however, the court ruled that the Froids were not entitled to recover the fees that they had paid to Zacheis because "the economic damages they seek to recover were not caused by any alleged malpractice." As for the fees that the Froids allegedly paid to successor counsel, the court ruled that "their allegations as to damages and causation [were] speculative" unless and until the Froids succeeded in their efforts to secure grandparent visitation rights.

¶ 42 With respect to the Froids' demand for an award of fees already paid, Zacheis argues that the district court's ruling accords with the holding in *McGee*, in which the division rejected the plaintiff's claim for economic damages because there was "no evidence that any attorney fees incurred by Ms. McGee in the preparation for final orders would not have had to have been

incurred in any event." 813 P.2d at 759. It is true that, irrespective of whether there was any malpractice during the early stages of the case, McGee needed representation for final orders. The division rejected her claim for economic damages arising from that representation because McGee did not show that her previous attorney's negligence made that phase of the case any more expensive than it otherwise would have been.

¶ 43 This case is on a different footing because the Froids are seeking an award of fees that they paid to Zacheis rather than asking to be compensated for having to hire a new attorney to represent them in proceedings that would have occurred irrespective of the quality of their prior representation. Accordingly, we do not read *McGee* as addressing, much less resolving, whether plaintiffs in the Froids' position may seek damages for the fees paid to the attorney they accuse of malpractice. But that is one form of relief that the Froids demand, and it is a remedy recognized under Colorado law. *See, e.g.*, *Parks v. Edward Dale Parrish, LLC*, 2019 COA 19, ¶ 16 ("One regular and legitimate function of a malpractice action is to contest attorney fees claimed by the attorney alleged to have committed malpractice."); *Roberts v. Holland & Hart*, 857 P.2d

22

492, 498-99 (Colo. App. 1993).[4]  Notably, Zacheis does not appear to argue otherwise in her answer brief, but instead turns back to the question of causation, asserting that "Plaintiffs' argument that they are entitled to a refund of their fees . . . simply ignores the element of causation that must nevertheless exist before a client can seek a refund of fees."  Because we have already concluded that the Froids adequately alleged that malpractice by Zacheis harmed their interests, we need not address this argument further.

¶ 44     As for the Froids' demand for fees they paid to successor counsel, we disagree that any claimed damages are speculative. Whether the Froids adequately alleged damage due to Zacheis's alleged malpractice does not turn on the *actual* success of any subsequent efforts to gain grandparent visitation rights.[5]  To the

---

[4] Assuming the Froids are able to prove the other elements of their legal malpractice claim, they would not be eligible to recover *all* of the fees that they paid to Zacheis, but instead only those that they paid for "services that were performed incompetently."  *Roberts v. Holland & Hart,* 857 P.2d 492, 498 (Colo. App. 1993).

[5] In addition, the Froids' engagement of successor counsel is distinguishable from the situation in *McGee v. Hyatt Legal Services, Inc.,* 813 P.2d 754 (Colo. App. 1990).  In *McGee,* the division held that the plaintiff could not seek reimbursement for fees associated with the permanent orders hearing because those fees would have been incurred regardless of the earlier attorney's malpractice.  Here,

contrary, all that the Froids needed to do to survive a motion to dismiss was plausibly allege that Zacheis's alleged malpractice caused them to have to hire successor counsel in the first place. Because that is exactly what the complaint asserted, it stated a claim upon which relief could be granted and should not have been dismissed under C.R.C.P. 12(b)(5).

## IV. Conclusion

¶ 45 We affirm the district court's judgment to the extent that it dismissed the Froids' claim for noneconomic damages. We reverse the court's dismissal of the Froids' claims for economic damages and remand the case for resolution of those claims.

JUDGE FOX and JUDGE HARRIS concur.

---

because the Froids hired successor counsel to initiate new proceedings that were not an inevitable part of the custody dispute, the fees that they paid to that attorney "would not have had to have been incurred in any event." *Id.* at 759.