23CA1265 LBI v Scanlan 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1265 Summit County District Court No. 23CV30050 Honorable Karen A. Romero, Judge LBI Group, LLC, a Colorado limited liability company; Steven Robert Anderson; and Debra Sue Anderson, Plaintiffs-Appellants, v. Tim Scanlan, Defendant-Appellee. JUDGMENT AFFIRMED Division III Opinion by JUDGE DAVIDSON* Yun and Moultrie, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Dill Dill Carr Stonbraker & Hutchings, PC, Patrick D. Tooley, Denver, Colorado; Hamil Law Group LLC, J. Lawrence Hamil, Denver, Colorado, for Plaintiffs-
Appellants Beltzer Bangert & Gunnell LLP, Buck S. Beltzer, Eric J. Moutz, Greenwood Village, Colorado, for Defendant-Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Plaintiffs, LBI Group, LLC; Steven Robert Anderson; and Debra Sue Anderson (collectively, the Andersons), appeal the district court’s judgment dismissing under C.R.C.P. 12(b)(5) their complaint against defendant, Tim Scanlan. We affirm. I. Background ¶ 2 In 2019, Mr. Anderson approached Mr. Scanlan about building a home in Silverthorne, Colorado. During precontract discussions, Mr. Anderson told Mr. Scanlan that the Andersons had to finance the home’s construction costs and had a total budget of $2 million. Mr. Scanlan provided an initial budget in July 2020, estimating the building cost at $1,698,452 plus a $30,000 contingency. The budget also accounted for $634,300 in high-end allowances, raising the total cost to $2,332,752.
1 ¶ 3 Mr. Anderson told Mr. Scanlan that this estimate exceeded the Andersons’ budget, and after some back and forth, Mr. Anderson spoke with the lender to see whether he could increase the loan to meet the estimate. Mr. Anderson then told Mr. Scanlan the lender 1 The parties’ contract defines “allowances” as “specifically itemized, optional portions of the Work or materials for which the Contractor or Owner has estimated a cost.” 
2 would finance the home if costs were kept to $2.1 million. Mr. Scanlan responded, “I know we can get it done for that budget number.” ¶ 4 After reviewing the Andersons’ finalized architectural drawings, Mr. Scanlan provided an updated budget in September 2020. The updated budget estimated the building cost at $2,278,284 plus a $30,000 contingency fee. And with high-end allowances, the total cost of the home would be $2,408,784. ¶ 5 Later that month, the Andersons contracted with Raptor Construction, Inc. (Raptor), Mr. Scanlan’s business, to build the home. Raptor built the Andersons’ home, but by May 2022, Raptor claimed the home’s total costs had increased to over $3.1 million. To cover these increased costs, the Andersons had to refinance their home with a larger mortgage.
2 2 After the home was finished, the Andersons refused to pay the full costs claimed by Raptor. Raptor subsequently recorded a lien on the home and sued the Andersons to foreclose on its lien. In return, the Andersons asserted several contract and tort counterclaims against Raptor, the latter of which appear nearly identical to the claims here. As best we can ascertain, the other suit is still ongoing. 
3 ¶ 6 The Andersons sued Mr. Scanlan, alleging that he misrepresented or concealed the true building costs to induce the Andersons to contract with Raptor. Based on these allegations, the Andersons brought claims for fraudulent misrepresentation, negligent misrepresentation, and nondisclosure or concealment. ¶ 7 Mr. Scanlan moved to dismiss the complaint under Rule 12(b)(5), attaching the parties’ contract as an exhibit. In relevant part, Mr. Scanlan argued that the Andersons failed to allege reasonable reliance as a matter of law because the contract expressly disclaimed the accuracy of any cost estimate and warned that costs could increase.
3 ¶ 8 Considering the contract without converting the motion to dismiss into one for summary judgment, the district court granted the motion and dismissed the complaint with prejudice. 3 In his motion to dismiss, Scanlan also argued that (1) the complaint failed to allege he acted in an individual capacity, and (2) the economic loss rule barred the Andersons’ claims. However, the district court did not reach those issues, and they are not at issue in this appeal. 
4 ¶ 9 The Andersons now appeal, asserting the district court erred in multiple respects by dismissing the complaint. We address each argument in turn and perceive no error. II. The Court Properly Dismissed the Complaint A. Standard of Review ¶ 10 We review de novo a district court’s ruling on a motion to dismiss. Patterson v. James, 2018 COA 173, ¶ 16. We apply the same standards as the district court, accepting the complaint’s factual allegations as true and viewing those allegations in the light most favorable to the plaintiff. Id. ¶ 11 A court may dismiss a complaint under Rule 12(b)(5) if the factual allegations do not, as a matter of law, support a claim for relief. Froid v. Zacheis, 2021 COA 74, ¶ 17. ¶ 12 We also review de novo the interpretation of a contract. Klun v. Klun, 2019 CO 46, ¶ 18. B. The District Court Properly Applied the Rule 12(b)(5) Standard ¶ 13 We reject the Andersons’ assertions that the district court misconstrued the complaint, and we conclude that nothing in the 
5 court’s analysis suggests it misapplied the Rule 12(b)(5) standard in resolving the Andersons’ motion to dismiss. ¶ 14 First, we disagree with the Andersons that the district court misread their complaint. To the contrary, the court accurately summarized the basis for the Andersons’ lawsuit and acknowledged the Andersons’ allegations of misrepresentations by Mr. Scanlan as to how he reached the estimated budget and how he could build the home within the Andersons’ budget. The court properly interpreted these statements to mean that the home would cost no more than $2.1 million and that this was the only reason the Andersons decided to sign the contract. In the words of the court: “[The Andersons] claim they justifiably relied on [Mr. Scanlan’s] statements concerning the cost of building their home.” ¶ 15 Moreover, and also contrary to the Andersons’ assertions, the district court repeatedly referred to the concealment claim as separate from the misrepresentation claims, and the court addressed allegations that specifically related to the concealment claim. ¶ 16 Nor did the district court misapply the standard of review. 
6 By its plain terms, the order accurately states the applicable Rule 12(b)(5) standard and explicitly confirms that the court accepted the allegations in the complaint as true and viewed them in the light most favorable to the Andersons. The court’s order then provides that, based on its determination of clear and specific language in the contract, the Andersons could not establish reasonable reliance as a matter of law.
4 C. The Contract is Central to the Andersons’ Claims ¶ 17 Even so, the Andersons contend that the district court’s Rule 12(b)(5) ruling must be reversed because it improperly considered the parties’ contract without converting the motion into one for summary judgment. Again, we disagree. ¶ 18 When resolving a motion to dismiss under Rule 12(b)(5), a court may only consider the complaint’s factual allegations, documents attached to or referenced in the complaint, and matters of which the court may take judicial notice. Froid, ¶ 18. If a court considers “matters outside the pleading” when resolving a Rule 4 Even if the district court had misapplied the C.R.C.P. 12(b)(5) standard, any such error would be harmless because we review the motion to dismiss de novo. See Roane v. Elizabeth Sch. Dist., 2024 COA 59, ¶ 21. 
7 12(b)(5) motion, “the motion shall be treated as one for summary judgment and disposed of” under C.R.C.P. 56. C.R.C.P. 12(b). ¶ 19 However, a document is not considered a “matter outside the pleading” if the plaintiff refers to it in their complaint, even when the plaintiff does not attach the document to the complaint or incorporate it by reference. Yadon v. Lowry, 126 P.3d 332, 336 (Colo. App. 2005). Thus, if the plaintiff refers to a document in their complaint and that document is central to the plaintiff’s claim, the defendant may attach an authentic copy of the document to their motion to dismiss, and the court may consider the document without converting the motion into one for summary judgment. Id. “The reason for the rule is obvious: ‘If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.’” Id. (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997)). ¶ 20 That is exactly what happened here: the Andersons did not attach the contract to their complaint, Mr. Scanlan attached it to his motion to dismiss, and the district court considered it without converting the motion to dismiss into a motion for summary 
8 judgment. The court reasoned that the contract was central to the Andersons’ claims because the complaint referenced the contract approximately thirteen times in the context of those claims. ¶ 21 The Andersons contend that the district court’s ruling was in error. More specifically, they assert that their “tort claims against Scanlan are neither based on nor derive from” the contract but rather “are premised on Scanlan’s fraud . . . during the [p]re[c]ontract [p]eriod.” In support, they emphasize that Mr. Scanlan is not a party to the contract, the contract has no legal effect on the communications between the Andersons and Mr. Scanlan, and the contract postdates the “false representations and fraudulent omissions” Mr. Scanlan made prior to the contract. ¶ 22 However, the thrust of the Andersons’ claims is that Mr. Scanlan, by misrepresentations and omissions, fraudulently induced them to execute the contract, resulting in damages. As the Andersons acknowledge in their opening brief, “it would be difficult, if not impossible, to plead fraud in the inducement of a contract without referring to the contract.” And, although the Andersons say this “hardly” makes the contract central to their claims, they do not explain — nor is it apparent to us — how, under the circumstances 
9 here, a court could assess alleged fraudulent or negligent misrepresentations or omissions without looking at the subsequent agreement. ¶ 23 To illustrate, regarding their nondisclosure or concealment claim, the Andersons allege in their complaint that • “Scanlan concealed or failed to disclose facts with the intent that [the Andersons] rely on the fact that the disclosed facts did not exist, and enter the [c]ontract with Raptor”; • the Andersons “entered the [c]ontract with Raptor relying on their belief the concealed or undisclosed facts were different than they actually were”; and • the Andersons’ “reliance was justified” and “caused damages to them.” ¶ 24 Likewise, regarding their negligent misrepresentation claim, the Andersons allege in their complaint that • “Scanlan gave [the Andersons] false information in the form of the false representations, concealments, and non-disclosures”; 
10 • “Scanlan gave the information to [the Andersons] as guidance for [the Andersons] to use in a business transaction with Raptor, namely the [c]ontract”; • “Scanlan gave the information to [the Andersons] with the intent that the Andersons would rely on it to enter the [c]ontract with Raptor”; and • the Andersons “justifiably relied on the information provided by Scanlan and did enter the [c]ontract with Raptor,” which “caused the Andersons damage.” ¶ 25 Thus, while the Andersons insist that their claims are confined to precontract actions that induced them to come to the table, it remains that there could be no completed tort claim under these circumstances unless they actually entered into the contract. That is, without the contract, the Andersons would have no claims. See, e.g., W. Cities Broad., Inc. v. Schueller, 830 P.2d 1074, 1077 (Colo. App. 1991) (“Actual damage is an essential element” of a fraudulent inducement claim, and to recover, a plaintiff “must prove both the value of the consideration he actually received under the fraudulently induced contract and the value that consideration would have had if the representations had been true.”), aff’d, 849 
11 P.2d 44 (Colo. 1993); accord Club Matrix, LLC v. Nassi, 284 P.3d 93, 96 (Colo. App. 2011). ¶ 26 We are similarly unconvinced by the Andersons’ argument that the district court improperly “conflated” Mr. Scanlan and Raptor because Mr. Scanlan was not a party to the contract and because the contract did not bar the Andersons from asserting claims against Mr. Scanlan. This appears to be a variation of the Andersons’ argument — rejected above — that the court should not have considered the contract because it is not central to their claims. In any event, to the extent this argument is different, we note that many allegations in the complaint tie Mr. Scanlan and Raptor together. For example, the complaint alleges that • “Scanlan communicated frequently with the Andersons for the purpose of inducing [them] to enter the [c]ontract with Raptor”; • the Andersons “reasonably and justifiably relied on” Mr. Scanlan’s representations, “and, in reliance on Scanlan’s representations, entered the [c]ontract with Raptor to their detriment”; 
12 • “without Scanlan’s representations that Raptor could and would build the [h]ome” within the Andersons’ budget, they would have stopped discussing the contract with Mr. Scanlan; and • Raptor’s claimed total cost of $3.1 million far exceeded “the amount for which Scanlan represented Raptor could and would build the [h]ome.” ¶ 27 Again, we do not see how a court could compare Mr. Scanlan’s precontract representations to what Raptor promised to deliver under the contract without looking at the agreement itself. ¶ 28 Thus, we conclude that the district court properly considered the parties’ contract in resolving the motion to dismiss. D. By the Plain Terms of the Contract, the Andersons Cannot Show Justifiable Reliance on Scanlan’s Precontract Statements as a Matter of Law ¶ 29 As their final contention, the Andersons argue that the district court incorrectly determined that, under the terms of the executed contract, they could not show justifiable reliance as a matter of law. We disagree. ¶ 30 Claims for fraudulent misrepresentation, negligent misrepresentation, and nondisclosure or concealment share a 
13 common element — proof of plaintiff’s justifiable reliance on those representations or omissions. See, e.g., Allen v. Steele, 252 P.3d 476, 482 (Colo. 2011) (negligent misrepresentation); Barnes v. State Farm Mut. Auto. Ins. Co., 2021 COA 89, ¶ 28 (fraudulent misrepresentation); CJI-Civ. 19:2 (2024) (nondisclosure or concealment). “Reliance is not justifiable if another person of similar intelligence, education, or experience would not have relied on the alleged representation.” J.A. Walker Co. v. Cambria Corp., 159 P.3d 126, 132 (Colo. 2007) (Hobbs, J., dissenting). ¶ 31 Accordingly, contract language that “clearly and specifically” disclaims precontract representations or omissions may preempt tort claims based on those statements or omissions. Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 74 (Colo. 1991) (negligent misrepresentation); see, e.g., Colo. Coffee Bean, LLC v. Peaberry Coffee Inc., 251 P.3d 9, 17-21 (Colo. App. 2010) (fraudulent disclosure and negligent misrepresentation). However, 
14 a “general integration clause” will not suffice;
5 rather, a “non-reliance” provision, to be effective, “must be couched in clear and specific language.”
6 Keller, 819 P.2d at 73-74; accord Colo. Coffee Bean, 251 P.3d at 19 (observing that Keller “left open the possibility that a clause ‘couched in clear and specific language’ could protect a party” (quoting Keller, 819 P.2d at 74)); see also Student Mktg. Grp., Inc. v. Coll. P’Ship, Inc., 247 F. App’x 90, 99 (10th Cir. 2007) (applying Keller to conclude that contract contained “the kind of ‘specific language’ necessary to preempt” negligent misrepresentation claim); Steak n Shake Enters., Inc. v. Globex Co., 110 F. Supp. 3d 1057, 1082-83 (D. Colo. 2015) (applying Keller and other Colorado and Indiana law to conclude that contract’s language “specifically and clearly” barred fraudulent inducement claim), aff’d on other grounds, 659 F. App’x 506 (10th Cir. 2016). 5 An integration clause, sometimes called a merger clause, states that a contract is the complete and final agreement between the parties, thus limiting future disputes to the express terms of the contract. E.g., Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 73 (Colo. 1991). 6 The Andersons direct us to no requirement that a non-reliance provision must take a certain form, whether that be an integration clause or something else, other than that it must be “couched in clear and specific language.” Id. at 74. 
15 ¶ 32 As relevant here, the parties’ contract contains a “Cost of the Work” clause that provides: The term “Cost of the Work” shall mean costs necessarily incurred by the Contractor in the proper performance of the Work, excluding the Contractor’s Fee. . . . Contractor represents that all rates applied to determine the Cost of the Work, including all labor, materials, overhead and fee rates, shall be consistent with the then-current market rates applicable to projects of the same general scope and quality in the region where the Site is located. The Contractor’s Estimate of the Cost of the Work is included in Exhibit A, which is based on bids/proposals Contractor has obtained from its sub-contractors and on Contractor’s reasonable estimates of certain items. Contractor represents and warrants that all Work necessary to complete the Project is included in Exhibit A. While Contractor has made good faith efforts to assure the accuracy of its estimate of the Cost of the Work, Contractor does not guarantee that its estimate will actually be the Cost of the Work. Owner recognizes that the actual Cost of the Work could exceed Contractor’s estimate included in Exhibit A. (Italicized emphasis added.) ¶ 33 The contract also contains an “Other Conditions or Provisions” clause that states: This Contract may be executed in counterparts, each of which shall be combined to form one Contract. . . . The terms and 
16 conditions set forth herein shall constitute a solicitation from Contractor to Owner for an offer to perform the Work as described above. . . . No enforceable agreement, contract, or promise to perform shall be formed between the Parties unless and until an authorized representative of Contractor executes this contract. (Emphasis added.) ¶ 34 In its order, the district court acknowledged that the contract does not contain a “release of liability and waiver provision, an integration clause, or an exculpatory agreement.” However, citing the Cost of the Work clause, the court observed that the contract’s “non-reliance provision concerns precisely what [the Andersons] claim [Mr. Scanlan] misrepresented: the cost of building their home.” The court also noted that the Other Conditions or Provisions clause, which it described as “akin to an integration clause,” “further undermines [the Andersons] claim that they reasonably relied upon [Mr. Scanlan’s] pre-contractual budget estimate as the actual cost of building their home.”
7 Finally, the 7 In critiquing the district court’s reasoning, the Andersons assert that the court mischaracterized the Other Conditions or Provisions clause as “akin to an integration clause.” They also point out that the Other Conditions or Provisions clause “contains no disclaimer, 
17 court took judicial notice that Mr. Anderson is a Colorado bar-certified attorney to highlight that he was a “sophisticated party” when he entered into the contract. Given this, the court concluded that the contract’s clear and specific non-reliance provision “preempts [the Andersons’] reasonable reliance on the budget for the cost of building their home.” ¶ 35 In challenging the ruling on its merits, the Andersons’ main contention appears to be that the non-reliance language in the Cost of the Work provision does not clearly and specifically disclaim their reliance on Mr. Scanlan’s representations. In that regard, the Andersons stress that the “fulcrum” of their complaint “is not that there was a guaranteed price under the [c]ontract but rather that waiver, or anti-reliance language of any kind” that would preempt their reasonable reliance on Scanlan’s representations. It remains, however, that the court, for the most part, did not disagree with the Andersons’ characterization of the Other Conditions or Provisions clause and based its ruling on the non-reliance language in the Cost of the Work provisions. Thus, whether the Other Conditions or Provision clause is or is not an effective integration clause, and whether it is sufficient, standing alone, to limit the Andersons’ reliance, is of little consequence here. Cf. Student Mktg. Grp., Inc. v. Coll. P’Ship, Inc., 247 F. App’x 90, 99 n.9 (10th Cir. 2007) (analyzing Keller “to mean that a general integration clause is not sufficient to bar a claim for negligent misrepresentation” but that an additional disclaimer “could suffice”). 
18 Mr. Scanlan created a superficial budget of made-up numbers unsupported by bids from subcontractors that could not be relied on, and he knew it.” That is, according to the Andersons, during precontract discussions, Mr. Scanlan fraudulently and negligently misrepresented or failed to disclose that he did not have a firm and reliable basis for his cost estimates. ¶ 36 However, assuming as we must that Mr. Scanlan’s precontract statements were false or unsupported, we conclude as a matter of law that it was unreasonable for the Andersons to rely on Mr. Scanlan’s unsupported cost estimates considering the clear and specific language in the Cost of the Work clause. Indeed, by its plain terms, the clause set forth a cost estimate, attached as Exhibit A, explaining that the estimate was “based on bids/proposals Contractor has obtained from its sub-contractors and on Contractor’s reasonable estimates.”
8 The provision then clearly and specifically stated that “Contractor does not guarantee 8 We are unable to review Exhibit A, which includes the estimated costs to build the Andersons’ home, because it is not a part of the record. We therefore presume Exhibit A would support the district court’s judgment. See Marchant v. Boulder Cmty. Health, Inc., 2018 COA 126M, ¶ 18 n.2. 
19 that its estimate will actually be the Cost of the Work” and that the Andersons “recognize[] that the actual Cost of the Work could exceed Contractor’s estimate.” Moreover, to the extent the Andersons allege they were misled by representations or omissions concerning the “methodology, reliability, accuracy and control” over costs, the contract outlines a specific methodology to be used for calculating how the costs were to be computed — namely, that they would be based on “then-current market rates” for “labor, materials, overhead and fee rates.” Further, and more to that point, how Mr. Scanlan reached the cost estimate ultimately does not mean much considering that the contract set forth an estimate and, in no uncertain terms, provided a disclaimer that the estimate was not fixed and could change. ¶ 37 In addition, it is undisputed that Mr. Anderson — a licensed attorney — drove most (if not all) of the precontract discussions between the Andersons and Mr. Scanlan. Thus, we agree with the district court that, between the contract’s clear and specific language and Mr. Anderson’s sophisticated status as an attorney, it was unreasonable as a matter of law for the Andersons to rely on 
20 Mr. Scanlan’s precontract budget representations.
9 See J.A. Walker, 159 P.3d at 132-33 (Hobbs, J., dissenting) (emphasizing contracting party’s “sophistication” in concluding that reliance was not justifiable); Steak n Shake, 110 F. Supp. 3d at 1082-83 (noting contracting party’s “sophisticated” nature in concluding that the parties’ agreements barred fraudulent inducement claim); see also Colo. Coffee Bean, 251 P.3d at 19 (“[I]t is simply unreasonable to continue to rely on representations after stating in writing that you are not so relying.”) (citation omitted). ¶ 38 Nor are we persuaded, as the Andersons suggest, that the supreme court’s opinion in Keller requires a different result. In Keller, the plaintiffs were ranchers who purchased grain storage silos from the defendant. 918 P.2d at 70. The silos were designed 9 To the extent the Andersons suggest that a non-reliance provision cannot bar fraud claims, we disagree. See Colo. Coffee Bean, LLC v. Peaberry Coffee Inc., 251 P.3d 9, 19 (Colo. App. 2010) (concluding contract barred intentional fraud by nondisclosure claim); Steak n Shake Enters., Inc. v. Globex Co., 110 F. Supp. 3d 1057, 1082-83 (D. Colo. 2015) (concluding contract barred fraudulent inducement claim), aff’d on other grounds, 659 F. App’x 506 (10th Cir. 2016). Likewise, given the “specificity” of the language in the Cost of the Work clause, we reject the Andersons’ contention that the non-reliance provision is unenforceable on grounds of public policy. Colo. Coffee Bean, 251 P.3d at 19. 
21 to be airtight, enabling ranchers to store feed indefinitely and cut losses. Id. at 70-71. Based on representations contained in video tapes, brochures, and literature prepared by the defendant, the plaintiffs believed the storage silos would reduce or eliminate the use of protein supplements in feeding their dairy herd. Id. at 71. After the plaintiffs began to use the grain silos, however, their herd’s milk production dropped, and some of the herd became sick or died. Id. Further, the silos failed to produce the quality of silage that the defendant had promised. Id. The plaintiffs sued, asserting a claim for negligent misrepresentation. Id. The defendant moved to dismiss the claim, asserting that language in the parties’ purchase agreements barred such a claim. Id. at 72. ¶ 39 The purchase agreements in question provided the following: Buyer recognizes that any advertisements, brochures, and other written statements which he may have read . . . as well as any oral statement which may have been made to him, concerning the potential of the [silos] . . . are not guarantees and he has not relied upon them as such. . . . . [Buyer has] read and understood the terms and conditions of this purchase order including the warranties, disclaimers and 
22 terms and conditions herein given to me, either by the manufacturer or the seller. [Buyer relies] on no other promises or conditions and regards that as reasonable because these are fully acceptable to [Buyer]. Id. at 74. Rejecting the defendant’s argument, the supreme court concluded that these non-reliance provisions “simply state that the [plaintiffs] recognize that certain oral and written statements were not ‘guarantees’ and that the [plaintiffs] did not rely upon those statements ‘as such.’” Id. In other words, “[t]he language of those provisions does not clearly and specifically disclaim reliance by the [plaintiffs] on all representations made by [the defendant] prior to the execution of the contract.” Id. ¶ 40 But the alleged misrepresentations and non-reliance language in Keller are very different from those at issue here. As we read Keller, the plaintiffs claimed that the defendant misrepresented that the silos would enable them to store grain indefinitely and reduce or eliminate the use of protein supplements in feeding their herd. See id. at 70-71. It makes sense, then, that the purchase agreements’ generic language disclaiming unidentified statements regarding the guaranteed “potential” of the silos fell short of the “clear and specific language” required to bar a misrepresentation claim. Id. at 
23 74. Here, however, the Andersons’ numerous allegations all relate to one thing — that Mr. Scanlan misrepresented the estimated cost of building their home. And, tracking that specific claim, the contract language here clearly “does not guarantee” that the estimated cost “will actually be the Cost of the Work” and that the Andersons “recognize[] that the actual Cost of the Work could exceed” the estimated cost. Given that this is precisely the kind of clear and specific non-reliance language that Keller contemplates, it was unreasonable for the Andersons to rely on Mr. Scanlan’s precontract cost estimates. ¶ 41 Thus, like the district court, based on the clear and specific language in the contract, we conclude that the Andersons cannot show reasonable reliance as a matter of law. III. Disposition ¶ 42 We affirm the judgment. JUDGE YUN and JUDGE MOULTRIE concur.